## WINSLOW BROTHERS COMPANY v. McCULLY STONE MASON COMPANY et al., Appellants.

### Division One, June 18, 1902.

1. Mechanic's Lien: CONTRACT WITH OWNER OF REALTY: OR HIS AGENT. The right to a mechanic's lien is conferred by statute only on such persons as sustain a contractual relation, direct or indirect, with the owner of the land sought to be charged with the lien. But the owner need not necessarily contract in person; he may bind the land just as effectively if he acts through an agent. That is the meaning of the statute (sec. 4203, R. S. 1899) which gives a lien where the work is done or the materials are furnished "by virtue of any contract with the owner, or proprietor, or his agent, trustee or subcontractor."

2. ———: ———: LESSEE AS UNDISCLOSED PRINCIPAL: INSTRUCTION. A real estate company owned the land and two brothers owned all but two of its 500 shares of stock, and on the lots was a partially erected building, i. e., the foundations and walls up to the second story were built. Instead of contracting for finishing the buildings in its own name, a new company was organized for the sole purpose of putting up the building, and of this company 700 of its 1,250 shares were issued to the two brothers, and the remaining 550 shares to three other or outside persons, and these three were elected directors and officers, and then the real estate company made a ninety-nine-year lease to the new company, and sold to it the partially erected building for an amount equal to over half its capital, and thereafter, at a price something above its remaining capital, the lessee company entered into a contract with a stone-mason company to construct the building, and this company subcontracted with plaintiff to do the ironwork, which it did, and for the value thereof seeks to establish a mechanic's lien, not only against the leasehold, but also against the fee in the land. The lessee permitted the lessor to forfeit its lease, which meant a loss of the building and its own ruin, and to immediately execute to it another lease for almost the same rental. Then the real estate company within a few days sold the land to two private citizens for a large sum, subject to the lease, and gave bond to protect the grantees from all liens; and the lessee having failed to pay the

first two installments of rent, these grantees forfeited that lease, and the lessee was thereby bankrupted. *Held*, first, that it was proper to instruct the jury that if it was the intention, purpose and understanding between the real estate company and the lessee that the lessee should complete the building for the immediate use, enjoyment and benefit of the lessor, and it was completed in pursuance to that understanding, then the plaintiff subcontractor was entitled to its mechanic's lien against the fee simple estate and all the interest therein both of the lessor and its grantees; *and*, second, the lessee was simply the *alter ego*, of the real estate company, and was organized solely for the purpose of making the lease to it and having it make the contract for the improvements, and, hence, the real estate company's property is subject to the mechanic's lien to the same extent as it would be had the contract been made in its own name.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft,* Judge.

AFFIRMED.

*Collins, Jamison & Chappell* for appellants.

(1) The court erred in giving the instructions asked by plaintiff, and in refusing and modifying instructions asked by the appellants. R. S. 1899, sec. 4203; Squires v. Fithian, 27 Mo. 134; Porter v. Tooke, 35 Mo. 107; Bridewell v. Clark, 39 Mo. 170; Crandall v. Cooper, 62 Mo. 478; Schulenburg v. Hayden, 146 Mo. 583; Kline v. Perry, 51 Mo. App. 422; Garnett v. Berry, 3 Mo. App. 197; Hughes v. Anslyn, 7 Mo. App. 400; Planing Mill v. Brundage, 25 Mo. App. 268; Carthage v. Bauman, 44 Mo. App. 386; Barker v. Berry, 8 Mo. App. 446; R. S. 1899, sec. 4206. (2) The trial court erred in refusing to nonsuit the plaintiff at the close of plaintiff's evidence. Authorities under point 1. (3) There was no evidence in the case of any contractual relation existing as between the Van Raalte Investment Company and the contractor or the subcontractor, and, therefore, plaintiff was not

entitled to a lien against the fee.   Authorities cited under
point 1.

*Seneca N. & S. C. Taylor* for respondent.

(1)   Mechanic's liens are remedial, and should be lib-
erally construed to protect contractors and materialmen.
Hicks v. Scofield, 121 Mo. 381; Walden v. Robertson, 120
Mo. 38; Stone Co. v. Gray, 114 Mo. 497; Dewitt v. Smith,
63 Mo. 263; Supply Co. v. Light and Power Co., 75 Mo. App.
622; Construction Co. v. Jones, 60 Mo. App. 1; Rall Bros.
v. McCrary, 45 Mo. App. 365; McAdow v. Sturtevant, 41
Mo. App. 220; Bruns v. Braun, 35 Mo. App. 337; Hayden
v. Wulfing, 19 Mo. App. 356.   (2)   Under section 4203,
Revised Statutes 1899, the right to a mechanic's lien is given
to every subcontractor who furnishes material for, and which
is used in the construction of, any building, by virtue of any
contract with the owner, or proprietor, or his agent, trustee
or subcontractor upon complying with the provisions of the
statute.   Where it is manifest that the building was erected
for the immediate use, enjoyment or benefit of a particular
person, that person, within the meaning of the statute concern-
ing mechanic's liens, is to be regarded as the "owner or pro-
prietor thereof."   Burgwald v. Weippert, 49 Mo. 60; Marble
& White Lime Co. v. Bauman, 44 Mo. App. 386; Collins v.
Megraw, 47 Mo. 495; Mfg. Co. v. Gapen, 22 Mo. App. 397;
O'Leary v. Roe, 45 Mo. App. 567; Price v. Merritt, 55 Mo.
App. 640.   (3)   An agency may be created by the express
words or acts of the principal, or may be implied from his
conduct and acquiescence, so the nature and extent of the au-
thority of the agent may be implied or inferred from circum-
stances.   Cummings v. Hurd, 49 Mo. App. 145; Weber v. Col-
lins, 139 Mo. 508; Briggs v. Munchon, 56 Mo. 472; Higgins
v. Senior, 8 M. & W. 844; Higgins v. Dillingham, 22 Mo.
399; Hull v. Jones, 69 Mo. 587; Kuenzel v. Stevens, 155 Mo.

280; Mechem on Agency, secs. 106, 148; McNichols v. Nelson, 45 Mo. App. 446. (4) Where the building is erected and the materials are furnished under a contract authorized by the lessor and for its use, its title and interest in the land becomes subject to the mechanic's lien for such material. O'Leary v. Roe, 45 Mo. App. 572; Lumber Co. v. Nelson, 71 Mo. App. 118; Kerkley v. Wainwright, 86 Pa. St. 191; Hall v. Parker, 94 Pa. St. 109; Henderson v. Connelly, 123 Ill. 98; Hill v. Gill, 40 Minn. 441; Hacker v. Badow, 63 N. Y. 476; Berket v. Harper, 79 N. Y. 273; Hildon v. Merrill, 106 Mass. 528; Smith v. Norris, 120 Mass. 58; Lumber Co. v. Jones, 187 Ill. 210; Paper Co. v. Lire, 163 N. Y. 129. What is implied in a statute or contract is as much a part of it as what is expressed. Chouteau v. Railroad, 122 Mo. 389; United States v. Babbitt, 1 Black 55; Gelcke v. Dubuque, 1 Wall. 220; Bishop on Contracts (Enlarged Ed.), 241, 253 and 439.

MARSHALL, J.—This is a subcontractor's mechanic's lien suit to establish a lien on a lot on the corner of Fifteenth and Olive streets, in St. Louis. There was a verdict and judgment for the plaintiff, and the defendants appealed.

Briefly stated the facts are these:

On April 16, 1898, the Van Raalte Investment Company owned the said lot, on which there was a partially erected building, that is, the foundations and the walls up to the second story were built. This company had a capital stock of fifty thousand dollars, which was held as follows: Simon Van Raalte and Julius Van Raalte, two hundred and forty nine shares each, and Morris Van Raalte, two shares. The property was yielding no revenue, and the company was anxious to complete the improvements. Accordingly, Simon Van Raalte consulted McCully as to what character of building could be constructed that would be most profitable. After

deciding upon the character of the proposed building and hav-
ing the plans drawn therefor, instead of having the building
put up directly in the name of the Van Raalte Investment
Company, they caused a new company to be organized, called
the Emma Building Company, for the sole purpose, as Simon
Van Raalte told McCully, and as all the facts and circum-
stances unerringly show, to put up the proposed building. The
Emma Building Company was organized April 15, 1898, with
a capital stock of $125,000, alleged to be full-paid. The
stockholders were: Simon Van Raalte, four hundred shares;
Julius Van Raalte, three hundred shares; James F. Davis,
three hundred and fifty shares; Bennett Wassermann, one
hundred shares; and Jacob Lampert, one hundred shares.
Davis, Wassermann and Lampert, the minority stockholders,
were elected the three directors, and although the Van Raaltes
owned more than a majority of the stock of the company,
neither of them was elected a director. But the company au-
thorized Simon to act for it in all things and he did so, trans-
acting all its business. On April 16, 1898, the Van Raalte
Investment Company leased the lot to the Emma Building
Company for a term of ninety-nine years, at an annual ren-
tal of $12,000, together with all taxes and assessments, the
lessor reserving a lien on the buildings and improvements to
secure the rent, and the lessee being required to keep the
buildings insured for the benefit of the lessor, and if the
buildings were destroyed the insurance money to be used in
repairing or rebuilding. The lease further provided that at
the end thereof the lessee should surrender to the lessor "the
said demised premises, with their appurtenances, and the
building and erections thereon situated." On the same day,
by a separate writing, the Van Raalte company sold and as-
signed to the Emma Building Company the partially con-
structed building then on the property for $65,000. There-
after on September 12, 1898, the McCully Stone Mason

Company entered into a contract with the Emma Building Company to construct the building that McCully and Van Raalte had been consulting about, according to certain plans, for $60,789.50. The McCully company then contracted with the plaintiff to furnish the ironwork necessary to carry out the contract, which they did, and there is an admitted balance due the plaintiff company of $4,605.55 and interest on account thereof, for which that company is seeking by this action to establish a mechanic's lien against the whole estate, leasehold and fee, in the land. Thus matters went on until about May 1, 1899, when the work was stopped, the Van Raaltes claim because the McCully company was unable to proceed. On May 1, 1899, the Van Raalte Investment Company forfeited the lease to the Emma Building Company, and immediately made a similar lease to the same company, except that the rent was reduced from $12,000 a year to $10,500 a year. On May 11, 1899, the Van Raalte Investment Company sold and conveyed the land, with the improvements thereon, to Thomas H. West and Wm. L. Huse, for $220,000, subject however to the second lease to the Emma Building Company, the grantors giving bond to protect the grantee from all liens and incumbrances.

Thereafter on October 4, 1899, Thomas H. West and Wm. L. Huse forfeited the second lease to the Emma Building Company for non-payment of the installment of rent that fell due on August 1, 1899, and being the second installment of rent under the new lease. The McCully Stone Mason Company, the Emma Building Company, the Van Raalte Investment Company, and West and Huse are the parties defendant, but only the Van Raalte Investment Company and West and Huse have appealed. The judgment was for $4,801.50. It was personal as to the McCully company, it was against the leasehold in the land and all the right, title

Vol. 169 mo—16

and interest of the Emma Building Company, and it was also against the fee simple title now owned by West and Huse. The appellants only question the correctness of the judgment as it affects the fee simple title.

## I.

The sole legal question involved in this appeal, is whether the facts stated make out a prima facie case for the plaintiff to go to the jury upon, of a right in the plaintiff to a mechanic's lien against the fee simple title to the land.

Appellants do not deny that the personal judgment against the McCully company, and the mechanic's lien against the leasehold interest of the Emma Building Company, are proper and justified by the evidence. If it be true that the unfinished building was sold by the Van Raalte company to the Emma company for $65,000, before any work was done by McCully under his contract with the Emma company, then it would seem quite immaterial to the plaintiff, from a financial point of view, whether the lien attached to anything more than the leasehold interest or not, for the plaintiff's judgment is for only forty-eight hundred dollars, while the improvements are worth much more than that. It may be, though it is not shown by this record, however, that there are other liens with which the plaintiff might have to prorate, and that the aggregate of all the liens would exceed the value of the improvements and the leasehold estate. At any rate, the legal question is properly presented and must be decided.

It is true, as appellants contend, that a right to a mechanic's lien is conferred by our statutes only upon such persons as sustain a contractual relation, direct or *sub modo*, with the owner of the land or the interest in the land sought to be charged. But it is also as true of mechanic's contracts as it is of ordinary contracts, that the owner need not necessarily contract in person, but may bind himself just as

effectively if he acts through an agent. In fact, the statute (sec. 4203, R. S. 1899) gives a lien where the work is done or materials are furnished "by virtue of any contract with the owner, or proprietor, or his agent, trustee or subcontractor," thereby recognizing that an owner can bind himself through an agent. It is also true that such agency may be express, or implied from the conduct and acquiescence of the owner and from all the circumstances, which estop him from denying the agency. [20 Am. and Eng. Ency. Law (2 Ed.), pp. 314, 317; Hull v. Jones, 69 Mo. 587.] The doctrine of an undisclosed principal also applies as well to mechanic's contracts as to any other kind of contracts. On several occasions (Briggs v. Munchon, 56 Mo. 1. c. 472; Weber v. Collins, 139 Mo. 1. c. 508; Higgins v. Dellinger, 22 Mo. 399; Kelly v. Thuey, 102 Mo. 528), this court has quoted with approval the rule laid down by Baron PARKE in Higgins v. Senior, Mees. & W. 844, that: "There is no doubt, that where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals; and this, whether the agreement be or be not required to be in writing by the statute of frauds; and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent, in signing the agreement, in pursuance of his authority, is in law the act of the principal." To the same effect also is Story on Agency, sec. 270, cited and followed in Higgins v. Dellinger, 22 Mo. 1. c. 399, and Mechem on Agency, sec. 695. In such cases the agent is primarily liable but the undisclosed principal is also liable when discovered. [Mechem on Agency, secs. 695, 696.]

On the other hand, the mere fact that an owner consents to a tenant's making alterations or improvements upon the demised premises, or the fact that the tenant has contracted with the owner to make certain improvements on the leased premises, does not make the land or the landlord's interest in the land subject to a mechanic's lien. For in such cases the tenant acts for himself and not as agent for the owner. [20 Am. and Eng. Ency. Law (2 Ed.), p. 319.]

The most recent case in this State bearing upon the question in hand is Kuenzel v. Stevens, 155 Mo. 280. In that case a husband made a contract in his own name for the erection of a house upon his wife's land. The suit was to establish a mechanic's lien on the land on the theory that the contract, though in the husband's name, was really the wife's contract, she being the undisclosed principal for whom the husband acted as agent. VALLIANT, J., delivering the opinion of the court, said: "Although he acted in his own name, yet if he was really acting by authority of his wife and causing the house to be built on her account, he was in legal contemplation her agent." The opinion then points out the conduct of the wife with respect to the work of constructing the building, which applies to the case in hand so aptly that the following excerpt is taken therefrom:

"The testimony for plaintiff tended to show that Mrs. Stevens exercised a good deal of authority in the plans and construction of the building. Whether these acts of hers were by permission of her husband, and attributable to a wifely interest in her husband's affairs, or were from a conscious assertion of her own rights, the trial judge and jury had to decide from the circumstances. Mr. Stevens engaged the architects, and as between them nothing was said as to the ownership of the property, but before the drawings were concluded Mrs. Stevens saw the architects, discussed the plans and details, and gave them her views. When the contractors were ready to begin, she requested that the work of ex-

cavation wait until she arrived on the ground, as she desired to break the ground with the first shovelful of earth herself, and did so. She visited the plaintiff's planing mill, in company with her husband, to inspect the millwork that was to go into the house, found fault with some of it, and had 'it changed to suit her. She was at the building almost every day, criticised what she disliked, and had changes made; when her attention was drawn to a china closet and its details explained to her she expressed her disapproval, and said she would instruct the architect to change it, and it was done. Other changes were also made at her direction. Although Mr. Stevens was sometimes at the building with his wife, yet she did the most of the talking and gave most of the orders, and she was frequently there without him. Neither Mr. nor Mrs. Stevens went on the stand as a witness, but suffered the circumstances to speak and inferences to be drawn, while they, who alone knew the real fact, remained silent. It is unnecessary for the purposes of our present inquiry, to set out the evidence. It was of the character above mentioned, and although the jury thought it was not sufficient to establish the agency of the husband, the trial judge thought differently, and set their verdict aside."

In Burgwald v. Weippert, 49 Mo. 60, the contract was made with the husband for a building upon the wife's land. The action was against the husband and wife both, and for the establishment of a lien on the land. The plaintiff recovered a personal judgment against the husband and wife both, and a mechanic's lien judgment against the land. The defendants appealed. This court said:

"Defendants object to the record, first, because the petition shows that the contract was made with the husband and not the wife, to whom the land belonged. The contract must have been made for her use, as the house was to be erected on her land, and, hence, comes within the express provisions of section 21, chapter 195, General Statutes 1865 (Wagn. Stat.,

911), that 'every person, including all *cestuis que trust,* for whose immediate use, enjoyment or benefit any building, erection or improvement shall be made, shall be included in the words "owner or proprietor" thereof, under this chapter, not excepting such as may be minors over the age of eighteen years or married women.'" The personal judgment against the wife was reversed, and a personal judgment against the husband and a special judgment against the land was entered in this court.

It is useless to multiply precedents. The trial court instructed the jury on this branch of the case as follows:

"3. The court further instructs you, the jury, that if you believe and find from the evidence, that the completion of the building and improvements described in said mechanic's lien read in evidence, was for the immediate use, enjoyment and benefit of the Van Raalte Investment Company, and that on the sale and transfer of the uncompleted building mentioned in the evidence, as it stood on April 16, 1898, by the Van Raalte Investment Company to the Emma Building Company, and the execution of the lease read in evidence of the same date, it was the intention, purpose and understanding, both on the part of said Van Raalte Investment Company, and said Emma Building Company, that the latter should complete said building and that said completion of said building was done in pursuance of such intention, purpose and understanding that said building should be completed by said Emma Building Company for the immediate use, enjoyment and benefit of said Van Raalte Investment Company, then you will find that the plaintiff has established its mechanics' lien for the sum of $4,605.55 and interest thereon at the rate of six per cent per annum, from June 1, 1899, against the fee simple title to the real estate described in said mechanic's lien as to the interest therein of the said Van Raalte Investment Company and that of Thomas H. West and William L. Huse."

For the defendant the court instructed the jury that the mere fact that the lease to the Emma company required the lessee to keep the buildings insured and in case of loss to apply the insurance money to rebuilding or repairing the building, or the fact that the Van Raalte company knew the Emma company contemplated erecting the building and did afterwards erect the building, did not entitle the plaintiffs to a lien on the fee.

The instruction for the plaintiff, above set out, is assigned as error, in that it does not require the jury to find that a contractual relation existed between the Van Raalte company and the plaintiff, and it is strenuously insisted that the case was not tried by the plaintiff in the circuit court upon the theory of an undisclosed principal.

The use of the term "for the immediate use, enjoyment and benefit" of the Van Raalte company, used in the instruction, was evidently taken from the language of this court in Burgwald v. Weippert, 49 Mo. 60, above quoted. In that case it was said: "Where it is manifest that the building was erected for the immediate use, enjoyment or benefit of a particular person, that person, within the meaning of the statute concerning mechanics' liens, is to be regarded as the 'owner or proprietor thereof.'"

The instruction does not in so many words tell the jury the principles of law involved in the doctrine of an undisclosed principal. Nor would it have been proper to have done so in legal phraseology. It did tell the jury in commonplace, easily-understood language, that if they found from the evidence that it was in reality the Van Raalte Investment Company that was constructing the buildings, and that the lease to the Emma company and the making of the contracts by the Emma company was only a cover and that it was all done for the immediate use, enjoyment and benefit of the Van Raalte company, then the plaintiff is entitled to a lien on the fee. In other words, the legal effect of this instruc-

tion is that if the Emma company was simply an agent for the Van Raalte company, the undisclosed principal, then the estate of the Van Raalte company is liable to be charged with the lien.    This is to all intents and purposes exactly what Burgwald v. Weippert, 49 Mo. 60, and Kuenzel v. Stevens, 155 Mo. 280, hold to be the law, and what Baron PARKE said was the law, and what this court has so often quoted approvingly.

There was no error in the plaintiff's instruction, and that instruction predicated a right to a lien on the fee upon the doctrine of an undisclosed principal.    In fact that is the whole theory and genius of the plaintiff's case.

It only remains to consider whether the facts made out a prima facie case for the plaintiff, for, of course, the burden of proof rested upon the plaintiff to prove that the Van Raalte Company was really the principal in all these transactions.    [Norton v. Clark, 85 Me. 357.]

The facts shown in this case are quite as strong as those shown in Kuenzel v. Stevens, 155 Mo. 280, above quoted. It is only necessary to group a few of the facts and circumstances shown in this case to justify the verdict.    It is perfectly apparent that the Emma Building Company was organized solely for the purpose of making the lease to it and having it make the contract to build the improvements, and that it was in reality the *alter ego* of the Van Raalte Investment Company.    This is clearly shown by the fact that although the Van Raaltes owed a majority of the stock of the Emma company, they elected the minority stockholders the directors and officers of the company.  · Persons who have in good faith invested seventy thousand dollars cash in a business corporation do not usually permit other persons who have invested only fifty-five thousand dollars therein to take all the powers and offices and honors.    It may be possible, but it is hard to believe, that the Emma company paid the Van Raalte company sixty-five thousand dollars for the un-

finished improvements on the land, and had only sixty thousand dollars of its authorized capital left with which to finish the building. There is no evidence what the unfinished building was worth; the plaintiff says it was only worth $30,000, and the defendant says this is gratuitous because there is no evidence as to its value. But there is evidence that the McCully contract was for over sixty thousand dollars, and this was not all that was required to finish the building. But if the Emma company actually paid the Van Raalte company $65,000 for the unfinished improvements in April, 1898, and had sixty thousand dollars left to finish the building, it is incomprehensible why the Emma company, on May 1, 1899, permitted the Van Raalte company to forfeit its lease, and to immediately execute to it another lease. For the effect of that was that the Emma company lost its title to the improvements it had paid the Van Raalte company $65,000 for, and also lost the part or the whole of the $60,000 cash it spent in completing the building. It will not do to say that the first lease called for a rental of $12,000 a year and the new lease called for a rental of only $10,500. The $1,500 a year difference would not compensate the Emma company for the loss of the $65,000 or the $60,000. Neither will it do to say the Emma company could not help itself and had to take what it could get out of it. For the record shows that on May 11, 1899, just ten days after the forfeiture of the first lease to the Emma company and the execution of the new lease, the Van Raalte company sold the land, improvements and all to West and Huse for $220,000. So that it would have required no business genius for the Emma company to have prevented a forfeiture of the lease if it had so desired. Moreover, the Van Raaltes had seventy thousand dollars cash invested in the Emma company, and the record shows they were perfectly solvent. If it had not been for their interest to do so, or if the Emma company had not been a mere construction company owned by the Van

Raalte company the Van Raaltes would never have allowed the Emma company's lease to be forfeited and their seventy thousand dollars to be lost. Moreover, if the Emma company was unable to help itself and to prevent a forfeiture of the first lease, how happened it that on the same day the first lease was forfeited the Van Raalte company made a new lease to the Emma company? If the Emma company was unable to pay the rent under the old lease, how could any one expect it to pay the rent under the new lease, especially after the Van Raalte company had forfeited its rights to the improvements, and left it without assets or cash? Landlords acting bona fide do not so act towards bankrupt tenants.

According to the record, the Emma company's new lease was forfeited for the non-payment of the second installment of rent that fell due on August 1, 1899. This was not surprising, considering it had nothing on earth to pay rent with, when the new lease was executed. But the transaction figures up this way: the Emma company was organized April 15, 1898, with a paid up capital of $125,000. It paid the Van Raalte company $65,000 for the unfinished improvements on the land and took a lease for ninety-nine years at $12,000 a year. It contracted with McCully to pay him over sixty thousand dollars to nearly complete the buildings according to the plans the Van Raaltes had adopted before the Emma company was organized. The Emma company did not in terms agree in the lease to construct the buildings, but McCully testified that Simon Van Raalte, the president of the Van Raalte Investment Company, told him the Emma Building Company was organized solely for the purpose of completing the building for the Van Raalte company. On May 1, 1899, just a few days more than a year after the Emma company was so organized with a capital stock of $125,000, the lease is forfeited, the improvements it paid $65,000 for pass back to the seller, with $60,000 more added to them. It

gets a new lease which is forfeited six months later. Then in threatrical parlance, exit Emma Building Company, leaving the debt to the plaintiffs for the balance due for the materials it put into the building, and perhaps other debts unpaid.

Now, turn the camera and view the picture from the other side. The Van Raalte Investment Company had a capital stock of $50,000, owned all except two hundred dollars by the same Van Raaltes who put their seventy thousand dollars into the Emma Building Company. The Van Raalte Company owned the land and the unfinished buildings. It sold the unfinished buildings to the Emma Building Company for $65,000 and leased the land to that company. After the Emma company had spent $60,000, the remainder of its capital, in completing the buildings, it forfeited the Emma company's lease, and thereby reacquired title to the improvements it had sold to the Emma company for $65,000 plus the $60,000 spent by the Emma company in completing the building, plus whatever else remains due the plaintiff and possibly other creditors for work done on the building. Then the Van Raalte company made a new lease to the bankrupt Emma company. Then it sold the land, buildings and all to West and Huse for $220,000, subject to the last lease to the Emma company, and that lease is forfeited in less than six months for non-payment of the second installment of rent thereunder.

The result is that in eighteen months the Emma company, with a cash capital of $125,000, is wiped off of the business map, and the Van Raaltes' investment of seventy thousand dollars cash is forever gone. On the other hand, the Van Raalte Investment Company, with a capital stock of fifty thousand dollars, all except two hundred dollars of which was owned by the Van Raaltes, gets sixty-five thousand dollars for the unfinished buildings from the Emma company, then regains title to the same improvements and the

addition made thereto, by forfeiting the lease to the Emma company, and then sells land, buildings and all for two hundred and twenty thousand dollars. It is difficult for the mind of the average layman or even lawyer to grasp and clearly follow such rapidly-changing scenes in this unusual drama. But one fact stands out prominently, and that is that the mainspring that moved the whole complex machinery of the arrangement was the Van Raalte Investment Company. Others figure in the transaction, but only as lesser constellations, revolving around and for the benefit of the great planet, the Van Raalte Investment Company. Messrs. West and Huse were not connected with any of this part of the transaction—they figure only as bona fide purchasers protected by a bond against liens and incumbrances. What wonder the jury had no trouble in perceiving who was the principal and who the agent in the matter. Who could say the plaintiff had not made a prima facie case? The appellants did not take the stand in their own behalf. The prima facie case is therefore unimpaired. The judgment of the circuit court is right, and is affirmed. All concur.