In accordance with Act No. 235 of 1938, on November 23, 1945, Albert L. Vernon, hereinafter referred to as Vernon, made application to the Register of the Land Office for homestead entry of the North Half of the Northeast Quarter of the Northeast Quarter (N 1/2 of NE 1/4 of NE 1/4) of Section 7, Township 5, South of Range 8 East, situated in the Parish of Tangipahoa, said application bearing No. 1797. On January 12, 1946 his application was approved for entry, under receipt No. *Page 142 
1131, by the Register of the Land Office, hereinafter referred to as the Register.
On August 5, 1948, a contest affidavit was filed by Edward Baham, hereinafter referred to as Baham, with the Register. The Register set a hearing on August 25, 1948 for the taking of testimony before N. P. Vernon, the Clerk of Court and Exofficio Notary Public for the Parish of Tangipahoa; a hearing on the application and contest was held before the Register on September 8, 1948. On September 24, 1948, the Register held in favor of Baham, and ordered the entry of Vernon cancelled. Under the order of the Register, Vernon was granted thirty days in which to file an appeal from such decision or order to the District Court for the Parish of Tangipahoa, and the present proceedings are the appeal taken thereunder.
In his petition of appeal, Vernon attacks Act No. 235 of 1938 as being unconstitutional for the reason that the Act grants the right to the Register of Land Office to pass upon a contest to an application for homestead entry and determine whether such application should be annulled and cancelled, which matter is a judicial function and which matter cannot be delegated by the State Legislature to an administrative department of the government.
In the alternative, he alleges that the Register did not have the authority, under the provisions of Act No. 235 of 1938, to set trial of the cause before the Clerk of the Court for the Parish of Tangipahoa.
In the further alternative, he alleges that the Act provides for two types of homestead entry; first a homestead entry where the person actually lives on the property; second, a homestead entry where the applicant owns land adjoining the land sought to be homesteaded, and in that case the person making the entry need not live on the property sought to be homesteaded. He alleges that he belongs to the second class. He further alleges that he has cleared the property, has planted and cultivated the property and has improvements on the property and is using the property for cattle grazing purposes.
He alleges that he is entitled to a trial de novo. He makes Baham and the Register parties defendant and prays there be judgment in his favor and against the defendants reversing, avoiding and annulling the order of September 24, 1948, and ordering the re-instatement of his application for homestead entry and to dismiss the contest of Baham.
In her answer, the Register admits that Albert L. Vernon made application for homestead entry, admits that the entry was allowed, admits the filing of a contest affidavit and the right of plaintiff to appeal from the determination made by the Register and denies all of the remainder of Vernon's petition.
In his answer, Baham admits the filing of the contest affidavit to the entry of Vernon, the taking of testimony and the issuance of a decree by the Register cancelling the entry of Vernon, and the right of appeal granted to Vernon. He denies all of the remainder of Vernon's petition. In further answer, he alleges that the tract of land sought to be homesteaded by Vernon is not contiguous to and does not adjoin any other lands owned by said Vernon and that therefore the said Vernon is not entitled to homestead said property as an adjoining entryman; that the said Vernon did not, within six months after the allowance of his entry, establish his residence and commence the cultivation of the land sought to be homesteaded, and therefore cannot claim said land as an ordinary entryman. He further alleges that Vernon has lost all interest, claim or right in and to the said tract of land by Vernon's failure to comply with the provisions of Act No. 235 of 1938 and that the action of the Register was proper and should be sustained.
Under these issues, the trial of the appeal resulted in a judgment in favor of Baham and the Register affirming the decree and order of the Register, dated September 24, 1948, ordering the cancellation of the homestead entry of Vernon and making said order and decree its judgment. It further decreed that Baham be and he is hereby granted the preferential right of *Page 143 
entry of the property covered by the said entry as provided in Act No. 235 of 1938. It further decreed that Vernon vacate said property, and that Vernon pay all costs. From said judgment Vernon has appealed.
The following are the admitted facts: Vernon made homestead application No. 1797 for the North Half (N 1/2) of the Northeast Quarter (NE 1/4) of the North east Quarter (NE 1/4) of Section Seven (7), Township Five (5) South, Range Eight (8) East, situated in Tangipahoa Parish, and entry was allowed January 12, 1946, after being applied for on November 23, 1945. Prior to, at the time of his application and the allowance of entry and since and up to the time of the trial of his appeal before the District Court, Vernon was the owner of the East twenty-five (25) acres of the Southwest Quarter (SW 1/4) of the Southeast Quarter (SE 1/4) of Section Six (6), Township Five (5) South, Range Eight (8) East, which is the only property owned by Vernon in Tangipahoa. Vernon resides on this twenty-five acre tract. He has not lived on the land sought to be homesteaded but did, within three weeks after approval of the entry, clear the timber therefrom and thereafter plowed it and presently has one-half acre of strawberries, turnip greens and oats and has a shed and is claiming this as a using owner. The present crops are his first crops planted by him on the property. The shed was constructed in the fall of 1948.
It was further agreed that the following facts in regard to the South Half (S 1/2) of the Southeast Quarter (SE 1/4) of Section Six (6) and the North Half (N 1/2) of the Northeast Quarter (NE 1/4) of Section Seven (7) of Township Five (5) South, Range Eight (8) East, are shown by the public records of Tangipahoa Parish:
"Both tracts were owned by Genessee Lumber Company by deed recorded in COB 70, page 478, Genessee Lumber Company sold to Willard B. King the North half (N 1/2) of the Southeast Quarter (SE 1/4) of Section Seven (7) Township Five (5) South Range Eight (8) East. By deed recorded in COB 78, page 20 Genessee Lumber Company sold to Carl E. Kilgore the East half (E 1/2) of the Northwest Quarter (NW 1/4) of the Northeast Quarter (NE 1/4) of Section Seven (7). By deed recorded in COB 78, page 264, the same company sold to Charles C. Spaulding the West half (W 1/2) of the Northeast Quarter (NE 1/4) of the Northeast Quarter (NE 1/4) of Section Seven (7). By deed recorded in COB 80, page 60 Genessee Lumber Company sold to Gordon V. Guyton the East half (E 1/2) of the Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section Six (6), and by deed recorded in COB 80, page 218 sold the same man the West Quarter (W 1/4) of the Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section Six (6). By deed recorded in COB 71, page 651 Genessee Lumber Company sold to Edwin A. Trenery the Southwest Quarter (SE 1/4) [SW 1/4] of the Southeast Quarter (SE 1/4) of Section Six (6) Township Five (5) South Range Eight (8) East. In each of these deeds Genessee Lumber Co. as was its custom, reversed (reserved) and excepted to the vendor the strip of land Thirty feet (30') in width being Fifteen feet (15') on both sides of all sections and Quarter Section lines.
"The earliest one of these deeds is dated May 7, 1913 and the latest May 5, 1917.
"It is admitted that a public gravel road presently exists along the division line between Section Six (6) and Seven (7) Township Five (5) South Range Eight (8) East."
In his petition and in his brief, Vernon attacks the constitutionality of Sections 8 and 9 of Act No. 235 of 1938, as being a delegation of a judicial function to the Register. These sections are as follows:
"Section 8. If, at any time after filing of the affidavit required by Section 2 of this Act, and before the issuance of patent therefor, it is proved after due notice to the homesteader or his legal representative, to the satisfaction of the Register of the Land Office, that the said homesteader failed to establish a residence on the land so entered for six (6) months after entry, or changed his residence therefrom for a period of six (6) months at any time after filing his affidavit and before the expiration *Page 144 
of the period of five (5) years' residence required by this Act, or swore falsely to any material fact in his affidavit or final proof, then and in that event, such land shall revert to the State, and be held by it subject to redemption or homestead, as herein provided. All appeals from the decisions of the Register in such cases shall lie to the District Court of the Parish in which said lands are situated and shall be tried de novo. The person filing charges against an entryman under this Section, and prosecuting the same to a successful conclusion, shall have a preference right of sixty (60) days from final judgment in which to file his application for such land.
"Section 9. It shall be the duty of the Register of the Land Office to receive and pass upon the proof of residence and cultivation as herein provided and, subject to the right of the entryman, or in case of his death, of his legal representatives, to appeal from the decisions of the Register of the Land Office to the District Court of the Parish in which such lands are situated, when the case shall be tried de novo, the decision of the Register of the Land Office as to whether such proof shows full compliance with the requirements hereof, shall be final."
We cannot agree with the contentions of Vernon with reference to these sections. There is no delegation of any judicial functions to the Register under these sections but merely the proper administrative authority to see to it that any applicant for a homestead entry complies fully with law before a final certificate entitling the entryman to a patent is granted. Vernon's complaint that the Register had no authority to set a hearing before the Clerk of Court for the Parish of Tangipahoa for the purpose of receiving testimony, is not well founded, because, certainly, the Register in performing her administrative duty, had a right to ascertain the true facts existing in any proper manner which she saw fit. Moreover, Vernon's further complaint that he was not given a direct hearing before the Register herself and that his only hearing was before the Clerk of Court, has no merit for the reason that the action of the Register was not final and could not be final under the terms of the act. She had a right to use her own discretion in arriving at her decision of the question at issue, and under the terms of the act, Vernon had the right to appeal to the District Court and to then have the matter tried de novo. The District Court in the trial de novo was not called upon to review the procedure used by the Register but merely to determine whether or not the decision of the Register was correct. Similarly, we are not required to review the actions of the Register, but our duty is to determine whether or not the District Court ruled correctly on the question at issue.
In conclusion, since the contest has to be tried de novo in the District Court of the Parish wherein the property is situated, the objection in regard to lack of hearing before the Register or with the lack of legal or constitutional authority to pass on contests by the Register, make no difference in the District Court or in this Court. Under the provisions of Act No. 235 of 1938, there are two distinct types of homestead entries. Under the first, known as a straight entry, the applicant shall establish his residence on the land so entered within six months after the date of the approval of the entry. The second type of entry is provided for in the last portion of Section 1 of the Act in the following words: "* * that every person owning and residing on lands may enter, under the provisions hereof, such tax adjudicated lands lying contiguous
to his lands which shall not, with the land so already owned and occupied by such person, exceed in the aggregate 160 acres." (Italics ours.) Vernon makes no contention that he falls within the first type of entryman but does contend that he falls within the second type of entryman. Therefore the sole issue before this Court is whether or not the two tracts of land are "lying contiguous."
It is evident that the East 25 acres of the SW 1/4 of the SE 1/4 of Section 6 and the N 1/2 of the NE 1/4 of the NE 1/4 of Section 7 have a common point of contact only, *Page 145 
in that the southeast corner of the first tract corners with the northwest corner of the second tract.
In 17 Corpus Juris Secundum, at page 178, it is stated: "Contiguous. A word of Latin derivation, variously said to be from the words 'con' and 'tangere,' and from 'contiguus,' akin to 'contingere,' meaning to touch on all sides. It is a relative term, depending considerably on the context and the subject under consideration; and it has been construed variously by courts according to circumstances. * * * When applied to lands, 'contiguous' as ordinarily used carries the idea that they actually touch each other, and implies something more than a single common point of contact."
We find that the last quoted statement to be the holding in Louisiana. In the case of Lee v. Giauque, 154 La. 491, 97 So. 669, 670, in which the question at issue was whether lands in Section 31 of a certain township were contiguous to lands in Section 1 in an adjoining township, our Supreme Court held: "And to constitute a single tract of land the lands must be so situated that one may pass from one part to the other without passing over the lands of another. But, as it is impossible to pass through a mere point, it follows that one cannot pass from said section 31 to section 1 without passing over other lands. See Anvil Hydraulic Drainage Co. v. Code, 9 Cir., 182 F. 205, 206, 105 C.C.A. 45, and authorities there cited."
In the case of Edwards v. Carr, 19 La. App. 827, 137 So. 637, 638, 639, 141 So. 388, in which the question at issue was whether the SE 1/4 of NW 1/4 of Section 11 was contiguous to E 1/2 of E 1/2 of SE 1/4 of Sec. 10, all in the same township and range, our brethren of the Court of Appeal, Second Circuit, held: "Any possession which R. T. or Joe R. Brown might have had of the E 1/2 of E 1/2 of SE 1/4 of Sec. 10 would not constitute possession of the SE 1/4 of NW 1/4 of Sec. 11, the 40 in controversy, because the two tracts do not lie contiguous to each other. These two tracts have a common point of contact only, in that the northeast corner of the tract in section 10 corners with the southwest corner of the tract in section 11. But this does not make them contiguous to each other. Lee v. Giauque, 154 La. 491, 97 So. 669. The two tracts are distinct and separate from each other, and, where such tracts of land are conveyed in the same deed from the same person, the rule that possession of a part under title of the whole is possession of the whole has no application to the tract not actually possessed."
Again in the case of Turner et al. v. Glass et al., La. App., 195 So. 645, 646, the same Court held: "In view of this, and as the southwest corner of the tract belonging to plaintiffs is the northeast corner of the 30-foot strip, it must be held that their property does not abut and is not contiguous to the alleged passageway which they contend is obstructed by the fence. 'Two tracts of land which touch only at a common corner are not contiguous.' Anvil Hydraulic Drainage Co. v. Code, 9 Cir., 182 F. 205, 206, 105 C.C.A. 45; Lee v. Giauque,154 La. 491, 97 So. 669; Mandel v. McAnn, 16 La. App. 125, 133 So. 477; Edwards et al. v. Carr et al., 19 La. App. 827, 137 So. 637, 141 So. 388."
This seems to be the accepted meaning of the word "contiguous" in similar cases in the majority of other States. Besides the cases cited in the Anvil Hydraulic Drainage Co. v. Code case, supra, we find the following: "contiguous tracts of land" must be tracts or bodies of land which have one side, or at least part of one side, in common. Griffin v. Denison Land Co., 18 N.D. 246, 252, 119 N.W. 1041, 1043, an action involving two quarter sections of land.
In the case of Linn County Bank v. Hopkins, 47 Kan. 580, 28 P. 606, 607, 27 Am.St.Rep. 309, an action which involved the construction of the term as used in an act defining homestead, the Court said: "Two tracts of land touching only at one point are not contiguous."
Vernon recognizes the test of whether or not two parcels of land are contiguous is whether a person may pass from one to the other without crossing the land of another and if he can so do then the lands are contiguous. He contends *Page 146 
that since there is presently a public gravel road between the two tracts, he can pass upon this public road from one tract to the other tract without walking or passing upon the lands of another. This argument is altogether unreasonable and without force. In the deeds transferring these two tracts, the former owner of both tracts reserved and excepted to itself a strip of land thirty feet in width being fifteen feet on both sides of the property, that is, the south fifteen feet of Vernon's property and the north fifteen feet of the property in contest. Whether the title to this thirty feet is in the former owner or in the Police Jury of the Parish of Tangipahoa makes no difference. Moreover, it causes the two pieces of property to be separated and destroys the common corner which formerly existed.
For these reasons, the judgment appealed from is affirmed.