TATE, Judge.
This suit arises under the provisions of LSA-R.S. 41:541 et seq., providing for the homesteading by citizens of this State of unredeemed lands adjudicated to the State for unpaid taxes. Appellant Wall appeals from judgment below annulling his homestead entry to a certain forty-acre quarter — quarter-section of land situated in Tangipahoa Parish.
Pursuant to previous application, on August 23, 1954 the Register of the State Land Office issued to Wall a Homestead Entry Certificate to the tract in question.
The statutory provisions pertinent herein are that the homesteader must make an affidavit “that the application is made honestly and in good faith for the purpose of actual settlement and cultivation and to obtain a home for himself and not for speculation”, LSA-R.S. 41:542 subd. A(2); and that the homestead applicant cannot perfect his final title or patent to the land until he proves “that he has resided upon and cultivated the land for the term of five years immediately succeeding the date of entry,” LSA-R.S. 41:544 (from which, as in the case of World War II veterans such as appellant Wall, military service may be deducted, “provided that no patent shall issue until the entryman has resided upon, improved and cultivated his homestead for a period of at least one year,” LSA-R.S. 41:591).
The land so homesteaded reverts to the State if it is proved that “the homesteader failed to establish a residence on the land so entered for six months after entry, or changed his residence therefrom for a period of six months at any time” before the expiration of the perfective period of necessary residence and cultivation, LSA-R.S. 41:549.
Under the latter section, the appellee, Dr. J. H. McClendon,[1] on March 16, 1956- *248 filed an opposition and notice of protest to Wall’s obtaining a final patent to the land, on the ground that Wall had not resided upon or cultivated the homesteaded tract as required by statute.[2]
Under LSA-R.S. 41:549, 41:550, Wall appealed from the decision of the Register of the Land Office sustaining these objections and annulling the homestead entry certificate previously filed by appellant, by filing the present suit captioned “Dr. J. H. McClendon v. Barney Tate Wall” in the District Court of the parish where the property is situated. It is to be noted that these statutory sections provide that such appeals “shall be tried de novo” by the District Court. After trial, the District Court affirmed the Register’s ruling.
Parenthetically, although Wall is plaintiff in the District Court suit, said suit is captioned by his counsel similarly to the title of the administrative proceedings before the Register of the State Land Office; that is, as “Dr. J. H. McClendon v. Barney Tate Wall”, since Dr. J. H. McClendon had filed the petition of opposition before the administrative board. While there is weight to counsel for appellant’s contention that the proceedings should bear the same title as in the administrative proceedings, since properly speaking this is an appeal therefrom; in the absence of any contrary authority cited to us, we are inclined to think that the proceedings within the judicial department are distinct from those before the executive department, cf. Baham v. Vernon, La.App. 1 Cir., 42 So.2d 141, and for purposes of the judicial proceedings should be captioned in the same manner as other lawsuits filed, with the petitioner (plaintiff herein) shown as bringing same versus the defendant — at any rate, this would be less confusing.
The facts show that after receiving his homestead entry certificate on August 23, 1954, Wall removed 17 loads of timber and sold at least some thereof from the 40-acre tract before being enjoined by Dr. McClendon, who simultaneously filed affidavits with the State Register to secure revocation of the entry certificate on the ground that Wall had secured same by falsely swearing that he intended to acquire the tract “to obtain a home for himself and not for speculation,” LSA-R.S. 41:542, subd. A. On February 7, 1955, Wall built a one-room shack, 16' x 16' in dimensions, on the tract. He testified that he slept therein every night, save three or four, from that time up until the trial in November, 1956. By barbed-wire strand fence he enclosed approximately ten acres, in which he kept his horse and his child’s calf. During 1955, he raised several rows of vegetables there.
In 1956, he removed the stumps from most of the enclosed area, disked and plowed about three acres, upon which he cultivated strawberries, garden vegetables, and corn and beans, most of which were used for himself or his livestock or given to friends. He also built or moved several outhouses, such as a horse shed, etc., upon the land.
Able counsel for appellant urges most forcefully that, knowing of appellee’s continued opposition to his presence on the land, Wall did not wish to make more substantial improvements or a more expensive residence upon the land, and that the culti *249 vation was all that was reasonably required, considering that the tract was essentially woodland and therefore the homesteader could not, without clearing same, enter upon more extensive cultivation. It is claimed that therefore the trial court erred in holding that the evidence showed that Wall did not intend to make his home on the land homesteaded.
Construing the statutory provisions in question, our Supreme Court held that the “statute contemplates the applicant’s using the property by establishing thereon a home for himself and his family and also by his serious cultivation of it”, State ex rel. City of New Orleans v. Grace, 209 La. 669, 25 So.2d 301, 302. Considering this cited case and State ex rel. Albeanese v. Grace, 211 La. 685, 30 So.2d 756, both of which denied homestead rights to lands with commercial rather than agricultural potentialities; that the homesteading privilege is restricted to 160 acres of land and is barred to anyone already owning 160 acres, LSA-R.S. 41:541; and that the privilege of homesteading land contiguous to the home place of an applicant without his residing upon the homesteaded tract is given the contiguous resident providing the sum total of the land homesteaded with the land already owned does not exceed 160 acres, LSA-R.S. 41:541: we think the manifest legislative intent of Louisiana’s homestead entry act, LSA-R.S. 41:541 et seq., to be to enable an individual to obtain from the unused lands of the State a tract upon which to establish a home and to enter into the serious agricultural cultivation thereof; and not to enable a citizen to obtain State lands to be used as a hobby or simply as an investment.
Essentially, the District Court was called upon to decide whether Wall’s homestead application to obtain without cost the valuable timber lands in question was motivated by the real intention to acquire same as a home and for the agricultural cultivation thereof, or whether on the other hand Wall’s motivation was that of an investor or speculator desiring to acquire the lands without this requisite purpose. Wall’s intent, of course, must be determined not only by his words (which might in either case proclaim the same intent), but also by his course of conduct.
As in other appeals, particularly when based upon the evaluation of the credibility of the witnesses, this Court is required to accept the District Court’s factual determinations unless same are manifestly erroneous. Jones v. Jones, 232 La. 102, 93 So.2d 917; Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591. See, regarding judicial review under this statute, Baham v. Vernon, La.App. 1 Cir., 42 So.2d 141.
We cannot say that the State Register and the trial court erred in holding that Wall had not, within the meaning of the homestead entry act, resided upon or cultivated the land he sought to obtain by homestead rights, in view of the District Court’s better opportunity to evaluate Wall’s credibility (and we note that Mrs. Wall did not testify in corroboration of his alleged intent) and also of the surrounding circumstances.
Wall’s wife and stepdaughter remained at the substantial 2-story, six-room-and-bath home owned by him at the settlement of Loranger, where the postoffice was constructed on his property and owned by him, and in which his wife was postmistress; although Wall testified that his pre-school-age son slept with him every night at the shack on the homestead tract. Wall testified that he and his wife were not separated.
The federal homestead act, 43 U.S.C.A. § 161 et seq., is very similar to Louisiana’s, Sections 161 (entitlement), 162 (application), and 169 (failure to establish residence; reversion to Government) thereof being almost identical in wording to similar sections in the State act.
The facts in United States v. Bennett, 8 Cir., 296 F. 409, are very similar to the *250 present. The entryman, whose wife had a nearby ranch, built upon the tract for which he made federal homestead entry, a small house and barn, moved some furniture there, and fenced and cultivated about 40-60 acres. He spent part of his time at the homestead site and part at his wife’s ranch, where his wife and children stayed. The court, on the grounds of fraud which required a high standard of proof, annulled the homesteader’s final patent on the ground he had not established his home upon the homesteaded property as required by law, stating: “The fact that the wife does not reside upon the land does not prevent the husband from establishing and maintaining the requisite residence, but that fact goes to the bona tides of the husband. * * * There must be a present intention of establishing a home there to the exclusion of one elsewhere. * * * And the mere personal presence of the husband on the land does not meet the requirements of the law, where he maintains a family residence elsewhere, at least in the absence of explanatory circumstances.” 296 F. 412-413. See also Whaley v. Northern Pac. Ry. Co., C.C.D.Montana, 167 F. 664, at page 669.
We note that appellant Wall specifically did not testify, for instance, that his wife intended to give up the postmistresship (which she could not hold while living on the homestead tract due to its inaccessibility) or to come and live with him upon the homesteaded tract. We do not think the District Court erred in holding that Wall’s apparent intent to maintain the family home for his wife and school age children in the settlement of Loranger, and to maintain a separate building upon the homesteaded tract in which he slept every night, did not constitute a residence upon the latter tract so as to be within the meaning of the State’s homestead entry act.
Furthermore, it appears that the major portion of the acts cultivating a very small portion of the tract in question, not more than 3-8 acres, did not take place until after Wall appeared at the office of his attorney to make the final proof under LSA— R.S. 41:544, 41:545 to obtain his patent.. We doubt, under the circumstances of this case, whether such acts indicated a sufficiently serious intent to cultivate the land as required by the homestead entry act.
We do not believe it necessary to discuss other circumstances, such as Wall’s wife’s obtaining a homestead tax exemption on the town property in March of 1955, or Wall’s referring in his testimony to the town property as “home”, which tend to corroborate the trial court’s determinations herein contrary to appellant’s contentions.
For the above and foregoing reasons, the judgment of the District Court herein is affirmed.
Affirmed.

. After dismissal as premature of certain earlier proceedings filed in November 1954 immediately after appellant Wall appeared on the land and commencing cutting the timber, which proceedings had sought to enjoin the removal of the tim *248 ber and to annul the homestead entry certificate. As to the sale of some of the timber, without authorization from the State Register, cf. the statutory provision, requiring proof that “no part of the land has been alienated or encumbered”, LSA-R.S. 41:544, before issuance of the final patent; the homestead entry certificate itself vesting no title in the entryman, iBroxton v. Davis, La.App. 1 Cir., 80 So.2d 593.

. Although perhaps not legally material, it is noted that McOlendon had (subject to the adjudication to the State in 1932 for unpaid taxes of a prior owner in the chain of title) acquired record title to the property, possessed same as timber land marked by fire lanes and regularly inspected, and paid taxes thereupon from June of 1948 until Wall’s entry upon the land under the latter’s application for homestead rights.