STEWART CONCRETE & MATERIAL COMPANY, d/b/a Stewart Sand & Material Company, a corporation, Plaintiff-Appellant,

v.

JAMES H. STANTON CONSTRUCTION COMPANY, Inc., now known as S. E. E. K. O., et al., Defendants-Respondents.

No. 24886.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Felix B. Winston, Kansas City, for appellant.

Major W. Park, Jr., Kansas City, for respondents.

MAUGHMER, Commissioner.

The plaintiff sued the defendant, Stanton Company (and other defendants) on an open account for residential building supplies allegedly furnished and used by the defendant, Stanton Company, in the construction of residences located in the subdivision of Holiday Hills, Clay County, Missouri. By agreement there was a judgment for plaintiff and against defendant, Stanton Company, for $30,943.23. This general judgment is final. Plaintiff also sought to impress a portion of the account, in the amount of $6,525.35, with a mechanics' lien on eight specified lots lying within the subdivision. The other named defendants were holders of deeds of trust on those lots. After suit those deeds were released of record and plaintiff dismissed as to those defendants. The court directed a verdict (no reason stated) for the defendant, Stanton Company, as to the mechanics' lien and plaintiff has appealed. Denial of the mechanics' lien in the sum of $6,525.35 on the eight specified lots is the only issue presented by this appeal.

Plaintiff says it was an original contractor, filed its mechanics' lien statement within six months after the last materials were furnished, filed its suit within six months after the lien statement was filed, is in complete compliance with Chapter 429, Mechanics and Materialmen, V.A.M.S., and particularly with Sections 429.040 and 429.080, V.A.M.S., and is therefore entitled to enforcement of its claimed mechanics' lien. Defendant asserts that plaintiff failed to show: (1) the improvements consisted of two or more buildings on contiguous lots; (2) the buildings were erected under one general contract; (3) the materials went into the construction of those buildings and (4) title or interest in the materials furnished.

Mr. Harry Harrell, credit manager for plaintiff, Stewart Sand & Material Company, identified ledger sheets of that company, posted from drivers' delivery tickets, showing deliveries of materials to defendant company and charged to that company. The last ticket recited delivery on June 3, 1963 with the last preceding delivery on January 7, 1963.

Mr. Walter Dean, formerly credit manager for Stewart, testified. He said he was "in charge of and watching" the Stanton account, that Stanton had stopped buying from Stewart and that in November,

1960, Stanton owed "around $40,000.00" and there was a meeting with Stanton. He said that at a meeting in May, 1961, Stanton agreed to resume buying from Stewart and "pay on account as the money came in." He said that some time later they received a mechanics' lien release or waiver from Stanton which they (Stewart Co.) refused to sign. Mr. William Stewart, sales manager for Stewart, stated that on April 25, 1961, Mr. Stanton, Mr. Walter Dean and he had lunch together. He said Stanton and the Stewart credit manager had come to a misunderstanding and Stanton had stopped buying from Stewart. Mr. William Stewart, as sales manager, was anxious for such buying to be resumed. He said they discussed Stanton's unpaid balance and it was agreed Stanton would resume buying concrete and building materials from Stewart. He declared further that thereafter Stanton resumed and continued to buy building materials and concrete from Stewart.

Nine of Stewart's 1962 and 1963 truck drivers testified. Each identified delivery tickets taken in their handwriting and each described delivering concrete, drain tile and other construction materials to the Holiday Hills development. Neither could definitely point out to which particular house or lot each delivery was made, or whether, where concrete was furnished, it was used for foundations, footings, sidewalks or driveways. Mr. Edward Browning, a workman for Stanton, Mr. William Crockett, carpenter on the foundation crew, Mr. George Crockett, foreman of the basement crew, and Mr. Ferrell Gatewood, foreman of the form crew, all were employed by Stanton on the Holiday Hills project during 1962 and each identified his signature on receipts for materials received from the plaintiff company.

Mr. F. M. Hands, land surveyor, using a plat which it was stipulated correctly depicted the location of the eight lots involved, pointed out that (a) Lot 20, Block 10 and Lot 32, Block 10, have a common corner, but do not abut; (b) Lot 28, Block 10 has a common corner with Lot 30, Block 10, but these two lots do not abut. Some of the lots are separated by a street.

It was stipulated that Stanton Company conveyed one of those lots on July 23, 1963, and five others on September 9, 1963. Plaintiff's mechanics' lien statement was filed in the office of the circuit clerk, Clay County, Missouri on October 29, 1963, (within six months after the last materials delivery on June 3, 1963) and the original petition to foreclose this mechanics' lien was filed in that office on February 14, 1964. It was stipulated that since the filing of this lawsuit the plaintiff Stewart Sand & Material Company, a corporation, has changed its name to Stewart Concrete & Material Company d/b/a Stewart Sand & Material Company, a corporation, and the defendant, James H. Stanton Construction Company, Inc. has changed its name to S. E. E. K. O. Investment Company, Inc.

Only one notice of mechanics' lien was filed and it purported to cover all eight of the lots. Section 429.040, V.A.M.S. is as follows:

"When the improvements consist of two or more buildings, united together and situated upon the same lot or contiguous lots, or separate buildings upon contiguous lots, or a continuous or connected sidewalk in front or alongside of contiguous lots, and erected under one general contract, it shall not be necessary to file a separate lien upon each building or lot for the work done or materials furnished in the erection of such improvements." (Italics ours).

Section 429.080, V.A.M.S. reads in part as follows:

"It shall be the duty of every original contractor within six months, * * * to file with the clerk of the circuit court of the proper county a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements, and a true description of the property, or so near as

to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both, if known to the person filing the lien, which shall, in all cases, be verified by the oath of himself or some credible person for him."

It is apparent that the materials furnished were for separate buildings. The notice of mechanics' lien and the suit sought to impress the lien upon eight specifically decribed lots. It was, therefore, necessary, if the lien were to be valid, for it to be in compliance with Section 429.040, supra. That statute requires that the buildings be "erected under one contract" and upon "contiguous lots."

■ It has long been ruled and generally held that the words "erected under one general contract" as used in mechanics' lien statutes are not to be confined to a case where the whole of the buildings are to be completed under one contract, but include a contract to purchase all of the materials of a specified kind for the buildings. Phillip Gruner & Bros. Lumber Company v. Nelson and Haydel, 71 Mo.App. 110. Where plaintiff furnished building materials for the erection of five separate buildings on five separate lots for one builder, he was not required to keep separate accounts for the separate buildings, but his lien claim for the unpaid balance might be enforced against all five buildings, even though two such buildings had been sold. Coen v. Hoffman, 188 Mo. App. 311, 175 S.W. 103. Where a materialman seeks to impress a mechanics' lien under Section 429.040, supra, on several allegedly contiguous lots, he must show a contract between himself, the supplier, and the owner of the lots, or the developer acting for the owners. Mound City Supply Co. v. Woodland Development Corp., Mo. App., 414 S.W.2d 805. In our opinion plaintiff produced evidence of a general contract with Stanton to supply its products for erection of the houses by Stanton in Holiday Hill. The testimony of both Walter Dean and William Stewart, sales manager, is to this effect and would be at least sufficient, we believe, to carry the question to the jury.

■ We believe the testimony of plaintiff's nine truck drivers respecting deliveries to the Holiday site, coupled with receipts for such materials, signed by defendant's workmen and foremen on the job, is amply sufficient to meet the requirement of showing the materials went into the Holiday buildings. Defendant's suggestion that plaintiff has not shown title to or interest in the materials furnished is without merit.

To us the serious question is whether or not these eight lots which plaintiff seeks to impress with one mechanics' lien are "contiguous" within the meaning of Section 429.040, supra. If they are not, then the one notice of a mechanics' lien for the whole area is not sufficient and is unauthorized by the statute. It is undisputed that some lots were separated by streets and that two pairs of the eight lots have only a common corner. The whole tract or area of eight lots can only be held to be contiguous if a "common corner" meets that statutory requirement.

■ Our courts have held that lots which otherwise abut, except for their separation by a street or alley are, nevertheless, "contiguous" under the mechanics' lien statute. Ladue Contracting Co. v. Land Development Co. et al., Mo.App., 337 S.W.2d 578; Schwartz v. Shelby Construction Co. et al., Mo.Sup., 338 S.W.2d 781; Stamm Electric Co. v. Hamilton Brown Shoe Co. et al., en banc, 350 Mo. 1178, 171 S.W.2d 580. The reasoning in such decisions is that since the interest which the municipality takes in streets and alleys is not title in "fee simple", but only an "easement" and the fee, subject to the easement, remains in the lot owners, the lots still abut and are contiguous under the statute. We believe such a conclusion is quite logical and a proper interpretation.

Are two tracts or two lots which have only one common corner "contiguous"? 17 C.J.S. Contiguous, gives numerous defini-

tions. We quote one applied to lands from pages 361, 362:

"When applied to lands, 'contiguous' as ordinarily used carries the idea that they actually touch or border each other, and implies something more than a single common point of contact, and thus it has been held that contiguous tracts of land must be tracts or bodies of land which have one side, or at least part of one side, in common."

In Stamm Electric Co. v. Hamilton-Brown Shoe Co. et al., 350 Mo. 1178, 171 S.W.2d 580, 582, Judge Douglas, speaking for the Supreme Court en banc, had the following to say on the question:

"While the word 'contiguous' is a relative term and may have a variety of meanings depending upon the sense in which it is used (17 C.J.S., page 178; 9 Words and Phrases, Perm.Ed., page 90), we have no doubt that in the statute now under consideration it has been used in its primary sense as implying actual contact or connection. For the statutes to have application, mere close proximity is consequently not enough, but on the contrary, there must be an actual joining or touching of the lots in order for them to be contiguous. Such is the usual and ordinary meaning of the term; and a different meaning should therefore not be attributed to it unless the context in which it appears, the nature of the subject under consideration, and the ultimate purpose to be served should all indicate (which they do not) that it was purposely employed in the particular instance as connoting mere nearness or adjacency without the necessity for actual contact."

■ In that case the court held that even though the lots were separated by an alley, they were, nevertheless, contiguous. However, the quotation which we have incorporated from that opinion indicates quite clearly, we think, that mere cornering is not sufficient. In Griffin v. Denison Land Co., 18 N.D. 246, 119 N.W. 1041, the Supreme Court of North Dakota held that the word "contiguous" as used in a statute directing taxation of contiguous tracts did not include tracts which only cornered. In Baham v. Vernon, 42 So.2d 141, 145, the Court of Appeals of Louisiana, First Circuit, reviewed the cases on the question in that state and ruled "'contiguous tracts of land' must be tracts or bodies of land which have one side, or at least part of one side, in common."

■ Plaintiff quotes as follows from our Supreme Court en banc in the case of Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580, 584:

"The whole purpose of the mechanics' lien law, Mo.R.S.A. sec. 3546 et seq., is to afford effective security to mechanics and materialmen who furnish labor and materials in the making of improvements upon the property of others. Once furnished and put into the improvement, the labor and materials lose all further value to the mechanic or materialman, but enhance the value of the property to the benefit of the owner and those who may take under him. Consequently, it is only fair and just that the law should be construed as favorably as its terms will legitimately permit to the end of advancing the remedial purpose of its enactment, and so the courts do construe it in cases to which its provisions apply."

We subscribe to this declaration. To the same effect is the holding in Utley v. Wear, Mo.App., 333 S.W.2d 787, that the mechanics' lien statutes have an equitable purpose and the aim is to accomplish substantial justice. However, the cases also hold that the lien claimant must substantially comply with the statute. Mississippi Woodworking Co. v. Maher et al., Mo.App., 273 S.W.2d 753; Vasquez v. Village Center, Inc., Mo. Sup., 362 S.W.2d 588, 591.

Plaintiff has also invited our attention to opinions from foreign jurisdictions. In one of those cases the question was the interpretation of the phrase "contiguous and adjacent" under a contract for the re-

moval of rock. We believe that case and the others are distinguishable from our case and present different questions.

■ In our opinion the eight lots which plaintiff seeks to impress with a mechanics' lien are not "contiguous lots" within the statute for the reason that they do not abut, two pairs having only a common corner. Hence one lien cannot be impressed upon all eight of the lots.

In our opinion the trial court did not err when it directed a verdict for defendant as to the mechanics' lien.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.