GEORGE M. NEWHALL ENGINEERING CO., Limited, v. EGOLF et al.

(Circuit Court of Appeals, Third Circuit. February 15, 1911.)

No. 15 (1,382).

MECHANICS' LIENS (§ 168*)—TIME OF TAKING EFFECT—VISIBLE COMMENCEMENT OF WORK ON THE GROUND—"COMMENCEMENT OF A NEW BUILDING."
    Under Act Pa. June 4, 1901 (P. L. 437) § 13, which provides that a mechanic's lien, in case of an original construction, shall take effect "as of the date of the visible commencement upon the ground of the work of

---

building the structure or other improvement," the mere doing of half a day's work by a subcontractor in tearing down a part of a brick wall of a building left standing after a fire was not the visible "commencement of a new building," which would fix the date of the contractor's lien therefor, as against a mortgage taken several days after, and before any further work was done.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 299, 300; Dec. Dig. § 168.*

For other definitions, see Words and Phrases, vol. 2, pp. 1286, 1287.]

Appeal from the Circuit Court of the United States for the Middle District of Pennsylvania.

Suit in equity by Pusey & Jones against the Pennsylvania Paper Mills. From a decree (173 Fed. 634) postponing its lien to that of S. G. Egolf and others, the George M. Newhall Engineering Company Limited, appeals. Affirmed.

Sheldon Potter, Charles C. Norris, Jr., and Henry T. Dechert, for appellant.

Samuel B. Price and Cole B. Price, for appellees.

Before GRAY and LANNING, Circuit Judges, and HOLLAND, District Judge.

HOLLAND, District Judge. This is a contest for priority between a mechanic's lien and a mortgage upon real estate of the Pennsylvania Paper Mills, sold in a bankruptcy proceeding. The court awarded priority to the mortgage, whereupon the mechanic's lien claimant, the Newhall Engineering Company, appealed to this court. The mortgage was recorded June 29, 1904, and the lien was filed May 25, 1905; but the appellant claims to antedate its lien to June 23, 1904, by virtue of the Pennsylvania mechanic's lien law of June 14, 1901 (P. L. 437), the thirteenth section of which provides:

"The lien of the claim shall take effect as of the date of the visible commencement upon the ground of the work of building the structure or other improvement."

The proofs show that a fire had destroyed part of a paper mill plant on the land in question, and the Newhall Company contracted to erect a pulp-grinding mill in part on the foundations of the burned building. They sublet part of the work to Gorrey, a brick mason and concrete man. On June 23d John Gorrey, a son of the contractor, went on the ground and worked half a day in tearing down a brick wall of the burned building. We give his testimony at length:

"Q. Your father was the contractor for the building of the building of the pulp plant, was he not? A. Yes, sir. Q. What year did you go there to work? A. In 1904. Q. And what month? A. June. * * * Q. What day of the month? A. The 23d. * * * Q. Do you know, Mr. Gorrey, when the Pennsylvania Paper Mills had the trenches dug for the soda pulp mills? A. I couldn't say just what day. Q. Did you see them dug? A. Yes, sir. Q. Were they dug before or after you went there? A. After. Q. You have testified, Mr. Gorrey, that your father contracted with the Pennsylvania Paper Mills to do some work there. Isn't it true that the first work your father did was to work around the meters? A. No. Q. What was the first work? A. He tore down the back part of the mill. Q. Of what material was the back part

which he tore down composed? A. Brick. Q. He tore it down for the purpose of cleaning the brick? A. Yes. We used a part of the brick in the new building. * * * Q. Are you quite sure, Mr. Gorrey, that your answer is accurate as to the first work that your father did there? That it was cleaning up the back part of the mill? A. Yes, sir; that is the first work he did— breaking down. Q. You cannot recollect that the first work he did there was to repair the walls under the meter? A. The first day we started there, we started to tear down the building and clean up the brick, and then the next day they started to work in the meter room. There were several jobs going at once."

This comprises all pertinent proof on the subject. It would therefore seem that there is no evidence that the Newhall Company was under contract to tear down the old walls; second, that in tearing down the walls Gorrey would seem to have been working, not under his subcontract with the Newhall Company, but under a separate arrangement he made with the Pennsylvania Pulp Mills. But, assuming the half day's work in tearing down the old wall and cleaning off the brick was done by the Newhall Company by Gorrey, its subcontractor, we are clear it was not "the visible commencement upon the ground of the work of building the structure or other improvement." The purpose of this requirement of the statute is clear. It is to put persons, incumbrancers, and purchasers on guard and inquiry. But the tearing down of an old wall left standing by a fire and the cleaning of the bricks is an equivocal act. It is commonly done after a fire simply to preserve the bricks or to level a toppling wall. It does not necessarily imply the building of a new structure. For aught that appears, Gorrey may have torn down this wall on his own account and for his own benefit; for the proof is he afterward used the cleaned brick in the new structure. To allow a half day's work of this kind to jeopardize the lien of a mortgage, on the ground that the mortgagee was bound to take notice thereof as the visible commencement of a building operation, would be unreasonable and out of accord with everyday experience. The burden is on the Newhall Company of antedating its lien, and it cannot do it by an equivocal act of a few hours of tearing down work which is not necessarily, or even usually, an indication of the commencement of the work of building.

In Pennock v. Hoover, 5 Rawle, 291, the Supreme Court of Pennsylvania, in passing on the mechanic's lien law of 1806 (4 Smith's Laws, p. 300), by which the lien attached "from the commencement of the building," said:

"And the act of assembly of 1806 certainly contains nothing which in the slightest degree militates against what I think may be safely considered the universal understanding as to what constitutes the commencement of the building of a house, and that is the first labor done on the ground, which is made the foundation of the building, and to form part of the work suitable and necessary for its construction. Indeed, the act seems to require this construction in order to carry into effect the intention of the Legislature, which is the main thing to be attended to in expounding it."

And in Parrish's Appeal, 83 Pa. 111:

"It was decided in Pennock v. Hoover, 5 Rawle, 291, under the act of 17th of March, 1806, that the commencement of a building was the first work done on the ground for the foundation, as part of the work suitable and necessary for its construction."

Presumably with these judicial constructions in view the Legislature passed the act here in question, and in line with that construction we are justified in holding that on June 29, 1904, when the mortgage in question was recorded, the Newhall Company had not made any "visible commencement upon the ground of the work of building the structure." The tearing down of the old wall had no relation to or connection with the substructure or superstructure of the new building. Accordingly its lien, entered May 25, 1905, was rightly postponed to that of the mortgage. This conclusion is supported by Mutual, etc., Co. v. Rowand, 26 N. J. Eq. 390 (affirmed in Jacobus v. Mutual Benefit Life Insurance Co., 27 N. J. Eq. 605), wherein it is said of the New Jersey statute:

"The Legislature intended to make the actual and visible commencement of the building notice to all who might propose either to purchase or acquire liens upon the property. The commencement of actual operations on the ground for the erection of a building is constructive notice to all such persons of the claims which those who may contribute work or materials for the building may thereafter make against the property by virtue of the mechanic's lien law. * * * The excavation for the foundation is the 'commencement of the building,' within the meaning of the law."

And also by Brooks v. Lester, 36 Md. 70, where, in speaking of the words "commencement of the building" in the Maryland statute it is said:

"What the law means by these terms is some work and labor on the ground, the effects of which are apparent, easily seen by everybody, such as beginning to dig the foundation, or work of like description, which every one can readily see and recognize as the commencement of a building."

This view of the case renders it unnecessary to pass on the questions raised as to the sufficiency of the Newhall lien in other regards, and as to the effect of the waiver of priority of lien by the bondholders in favor of the receiver's certificates.

The decree of the court below is therefore affirmed.