HAROLD R. CLARK *v.* GENERAL ELECTRIC CO.
ET AL

5-4288                                    420 S. W. 2d 830

Opinion delivered November 6, 1967
[Rehearing denied December 11, 1967.]

*Michael Heindle, Wayne Owen* and *James R. Howard,* for appellant.

*Wootton, Land & Matthews, Roy H. Mitchell, M. C. Lewis, Jr., William R. Mitchell, Robinson, Thornton, McCloy & Young, Clayton Farrar,* and *Wood, Chesnutt & Smith,* for appellees.

JOHN A. FOGLEMAN, Justice. The principal question in this case requires the determination of priority between a construction money mortgage on the one hand

and several liens of materialmen, suppliers and mechanics on the other.

In 1964 Morehead Properties, Inc., (hereinafter called Morehead) having in mind construction of a large complex of "garden apartments," acquired certain lands in Hot Springs. Morehead had previously dealt with appellant for materials, supplies and financing in connection with similar construction in Texas. Appellant arranged for both permanent and construction financing for Morehead on the project in question. He accomplished this by guaranteeing the $400,000.00 construction loan by the Exchange National Bank of Dallas and acquiring a commitment for permanent financing by John Hancock Life Insurance Company when construction was completed and the apartments occupied. On April 14, 1965, Morehead executed a proper and valid mortgage on the property to the bank as security for the construction loan. It was not filed for record until April 21, 1965, at 11:21 a.m. It contained a recital that the money was to be advanced to Morehead from time to time. Actually, the entire amount of the loan was disbursed pursuant to preliminary agreement, however, by advances by the bank to appellant from time to time. He, in turn, made advances to Morehead for the payment of various costs incident to the project, with the proposed application of the advances usually specified by Morehead. The latter commenced construction on the project, making contracts with appellees for labor and materials. Morehead became insolvent before the buildings were completed or appellees paid. Appellant then paid the Morehead note upon demand of the bank and took an assignment of the note and mortgage. He also took possession of the apartment complex. Appellees then filed suits to enforce their liens and appellant filed a suit for foreclosure of the construction money mortgage. The suits were consolidated for trial and the chancellor found that the liens of appellees were prior to the lien of the construction money mortgage. The principal contention of appellant is that the trial court erred

in holding that the appellees' liens had priority over his mortgage.

The court's findings in this respect were based upon the activities of appellee Carroll Pyron, d/b/a Carroll Pyron Construction Company. Pyron was a heavy construction contractor, operating bulldozers and similar machinery. He was employed in October 1964 to clear the land of brush, debris and trees in order for a topographical survey of the premises to be made. This assignment was completed, Pyron billed Morehead and was fully paid. While no agreement was reached, Pyron was told at the time he did this work that Morehead would like to have him do the excavation for the concrete work. In the early part of April 1965 Morehead contracted with Pyron for the leveling of the land for a proposed apartment complex to consist of more than one building. After the clearing in 1964, several large trees and two old houses remained on the site, but these latter had been removed when Pyron first went there in 1965. The old foundations remained, however, and the land itself was of an uneven elevation. Pyron was furnished with a set of plans and building elevations were discussed. An agreement was made for Pyron to clear the property of remaining debris and to grade elevations for the building sites with compensation to be paid on an hourly basis. The latter undertaking was to be accomplished by moving dirt from one place to another on the site so as to bring the sites for the buildings to elevations satisfactory for the laying of concrete slab foundations.

On the morning of April 19th Pyron went to the building site with an employee named Terry to commence work. Pyron spent about 45 minutes establishing cut and fill elevations with a transit and an elevation rod. Terry had brought a large bulldozer with which he started moving the foundations of the old houses. That day he worked approximately six hours, during which he removed the foundations of the old buildings and

commenced the leveling operation. The condition of the soil after this work would have revealed that it had been "bulldozed over." The machine remained on the job site and was actually not removed therefrom for at least one week. An employee named Taylor went to the property at 7 a.m. on April 21st and spent about thirty minutes with Pyron, becoming oriented to the elevations. He then worked for an hour and a half, using the same machine. Nothing else was done on the apartment site before the filing of the mortgage. Ultimately Pyron completed the leveling work. Shortly prior to May 13th he dug the footings for the concrete foundations. This was the first actual work in connection with building the apartments, other than the bulldozer work.

Appellees contend that the work done by Pyron establishes the priority of all their liens, relying upon Ark. Stat. Ann. § 51-607 (1947). They argue that this work constituted "commencement of the buildings or improvements" in the sense of that section of the statute, so that all such liens dated from this "commencement" under the rule announced in *Planters Lumber Co.* v. *Jack Collier East Co.*, 234 Ark. 1091, 356 S. W. 2d 631. Appellees have virtually abandoned their original contention that the work in October 1964 constituted a commencement from which the priority would date, but rely on the work done on April 19th and 21st. We had occasion to determine whether there was a "commencement" of a building sufficient to establish lien priority recently in *Mark's Sheet Metal, Inc.* v. *Republic Mortgage Co.*, 242 Ark. 475, 414 S. W. 2d 106. There we held that the work done must be such as to make it obvious that improvements on the property were being commenced or were underway. We said that the clause in question means some visible or manifest action on the premises to be improved, making it apparent that the building is going up or other improvement is to be made. Reference was made in that opinion to *Rupp, Trustees* v. *Earl H. Cline & Sons*, 230 Md. 573, 188 A. 2d 146, 1 ALR 3d 815. In that case, the Maryland Supreme Court

held that neither the removal of soil from a part of a development site intended for the erection of an apartment building to another part of the site, intended for the construction of cottages, nor the grading and leveling of the apartment site constituted such "commencement" under a similar statute as to give a mechanic's lien preference over a subsequently recorded mortgage. They relied on their previous decisions holding that commencement of the building is "the first work on the ground which is made the foundation of the building and forms a part of the work suitable and necessary for its construction" (*Brooks* v. *Lester,* 36 Md. 65) and that driving of stakes and digging away of soil to level the ground prior to beginning construction were not sufficient (*Kelly* v. *Rosenstock,* 45 Md. 389). They had said in the earlier cases that the work must be such that everyone can readily see and recognize it as commencement of a building. This rule is followed by a great majority of the cases in which the question has arisen in states with statutes similar to ours. It is generally held that the mere preparation of the land for the construction is not sufficient. See Annot., 1 ALR 3d 822.

Even though not followed as an unqualified rule, actual and visible improvement to establish priority has been held in many of these cases not to begin until such work as excavation for a basement or foundation has begun. *National Lumber Co.* v. *Farmer & Son, Inc.,* 251 Minn. 100, 87 N. W. 2d 32; *North Shaker Boulevard Co.* v. *Harriman Nat'l Bank,* 22 Ohio App. 487, 153 N. E. 909; *Hagenman* v. *Fink,* 19 Pa. Co. Ct. R. 660; *Roy Bldg. & Loan Ass'n* v. *King,* 17 Pa. D & C 83, 22 Del. Co. 297; *Davis-Wellcome Mtge. Co.* v. *Long-Bell Lbr. Co.,* 184 Kan. 202, 336 P. 2d 463; *George M. Newhall Engineering Co.* v. *Egolf,* 185 F. 481 (3d Cir.). It has also been held that the labor or materials must be such as could afterward become, or be considered, a component part of the structure. *Conn. General Life Ins. Co.* v. *Birzer Bldg. Co.,* 61 Ohio L. Abs. 477, 101 N. E. 2d 408; *Sheridan, Inc.* v. *Palchanis,* 172 So. 2d 872 (Fla. 1965). At any rate, the weight of authority seems to be that

clearing, grading and filling of the land do not constitute the commencement of a building for the purpose of establishing priorities of mechanics' and materialmen's liens. See, *Kiene* v. *Hodge,* 90 Iowa 212, 57 N. W. 717; *Central Trust Co.* v. *Cameron Iron & Coal Co.,* 47 F. 136; *New Hampshire Savings Bank* v. *Varner,* 216 F. 721 (8th Cir.); aff'd 240 U. S. 617, 36 S. Ct. 409, 60 L. Ed. 828; *Maule Industries, Inc.* v. *Gaines Const. Co.,* 157 So. 2d 835 (Fla. 1963).

We hold that the work done in this case by Pyron was not such as to be visible or manifest action on the premises, making it apparent that a building or improvement was being commenced or underway. It was at most a preparatory operation.

Appellees contend, however, that there is no evidence that the bank or appellant made any visual inspection of the premises before the construction money mortgage was recorded so they could not have relied upon what they saw. This is analogous to an argument that one who does not examine the public records of mortgages would not be entitled to assert the priority of a mortgage taken by him and filed for record over a subsequently filed mortgage of which he had no notice otherwise. The question is not whether an inspection was made, it is rather what an inspection would have disclosed.

Appellees also contend that removal of the old foundation was sufficient to establish the priority, relying upon *Pratt* v. *Nakdimen,* 99 Ark. 293, 138 S. W. 974. In that case this court only held that the trial court correctly included the amount paid by a defaulting contractor for the removal of an old building and its foundation from the job site in the total sum of liens against the building for the purpose of fixing the percentage to be distributed upon the lienable claims asserted against the building, after default and completion of the building by the owner. No question of priorities was involved. In that case the court said that this cost was for

labor that went into the construction of the new building because it was impossible to build the new without the removal of the old. It must be noted that the contract with the original contractor called for the removal of a three-story building and the construction of a six-story structure. Even if it can be said that the cost of removing the old foundations was a lienable claim, this does not mean that this step establishes the priority of the lien. The statute provides for a lien for work upon a building or improvement [Ark. Stat. Ann. § 51-601 (1947)] but the priority is determined by the "commencement" (§ 51-607). The mere fact that the work was the proper subject of a lien cannot establish priority when it does not give notice of the commencement. The removal of the old foundations would no more give notice that a new building was to be erected than the wrecking and removal of the old building did, yet the lien claimants have not sought to use that date as the date of commencement. It is to be noted that priority was denied by the court in the *Rupp* case, even though Maryland's lien statute gave a lien for grading, filling and landscaping. Maryland Code (1957) Art. 63, § 1. The point is further illustrated by considering that the fabrication of fittings for the heating and air conditioning system was a proper item for a lien when the system was put in the building involved in *Mark's Sheet Metal* v. *Republic Mortgage Co.*, 242 Ark. 475, 414 S. W. 2d 106, but this step furnished no notice whatever of the commencement of the building.

We cannot say that appellant is entitled to priority for the entire amount of the judgment awarded him, however. Appellees question his entitlement to priority for the cost of the land, brokerage fees paid to Clark, a stand-by mortgage fee, title insurance, taxes and interest. The testimony showed that of the total advanced, the sum of $57,780.00 was for the purchase price of the land and was advanced by Clark to Morehead. This item may properly be considered as secured by appellant's prior lien, as the purpose of the loan and not the use of the proceeds is the determining factor. *Sebastian Build-*

*ing & Loan Assn.* v. *Minten,* 181 Ark. 700, 27 S. W. 2d 1011. The present case is distinguishable from *Planters Lbr. Co.* v. *Wilson,* 241 Ark. 1005, 413 S. W. 2d 55, in that there is no evidence here that either Clark or the Exchange Bank ever represented in any way that the purchase price of the lot had been paid, nor did either of them receive or retain any part of the purchase price, as did the construction money lender in the case last cited. However, under the holding of the *Wilson* case, appellant would not be entitled to priority for his brokerage fee of $4,000.00 or the stand-by mortgage fee of $8,000.00 paid to the insurance company which was to make the permanent loan after completion and occupancy of the building.

Appellees also question the disbursements for interest, title insurance and taxes. We need not consider the effect of control of loan disbursements (as we did in the *Wilson* case) on the general rule that loan purpose, not use, is the key priority factor because the question of lien priority on the remaining items is not dependent thereon. The item of taxes is a proper item for priority as it was paid to protect the property from what was or would be a prior lien. *Ashdown Hardware Co.* v. *Hughes,* 223 Ark. 541, 267 S. W. 2d 294. We see no reason why the charge for title insurance—an outlay for a necessary prerequisite for temporary financing —should not be a proper item. Interest would not be allowable on those sums deducted or paid for brokerage and stand-by mortgage fees (*Planters Lbr. Co.* v. *Wilson, supra*) but this appears to have been included in the judgment in favor of appellant and included in the court's decree.

We find no reason why payment to Clark for materials and supplies furnished by him or companies in which he had an interest should not be allowed as items properly disbursed under the construction loan.

Many other interesting questions are presented on the appeal, as well as on the cross-appeal of General

Electric Company which seeks to establish a lien for electric ranges furnished for the apartments. In view of our holding, these questions have become moot. By stipulation of the parties, a commissioner's sale of the property was had pending this appeal. The proceeds of that sale are to be distributed after final determination of this case. At that sale appellant became the purchaser for $340,000.00. He is entitled to priority for an amount in excess of this sum, so there will be nothing for distribution to the lien claimants in any event.

Reversed and remanded for entry of a decree pursuant to this opinion, an appropriate order on distribution of the proceeds of sale, and a release of supersedeas bond posted by appellant pursuant to stipulation of the parties.