**UNITED LUMBER COMPANY, a Corporation, Plaintiff-Respondent,**

v.

**MINMAR INVESTMENT COMPANY, a Corporation, et al., Defendants, Warren H. Wemhoener et al., Defendants-Appellants.**

No. 33943.

St. Louis Court of Appeals, Missouri.

July 27, 1971.

Motions for Rehearing or for Transfer to Supreme Court Denied Oct. 6, 1971.

Application to Transfer Denied Dec. 13, 1971.

Ziercher, Tzinberg, Human & Michenfelder, Clayton, Victor Packman, Lake & Schechter, Clayton, for defendants-appellants.

Oliver F. Erbs, Kirkwood, for defendants.

Susman, Willer, Rimmel & Elbert, Warren H. Kawin, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

By this equitable mechanics' lien action United Lumber Company sought to recover for the value of materials furnished to defendant Minmar Investment Company in the construction of seven residences in a subdivision named Woodmoor Acres, located in the City of Olivette, St. Louis County, and to have one lien impressed against the seven lots on which such residences are situated. Named as defendants in addition to Minmar, the developer of the subdivision, were other lien claimants, the record owners of the seven lots to whom title thereto had been transferred, the holders of individual notes and deeds of trust on six of the lots, and the trustees named in those deeds of trust. Minmar defaulted and a judgment for $7,168.84, together with interest, was rendered against it, from which no appeal was taken. Both the plaintiff and the above named defendants-appellants (hereafter called defendants), filed separate motions for a summary judgment. The chancellor initially rendered a judgment in favor of the defendants, but on motion of plaintiff set it aside and ultimately entered a judgment and decree in favor of plaintiff by which a lien was impressed against the seven residences and lots, with priority over the respective deeds of trust. The chancellor declared that portion of the action to be final for the purposes of appeal, and defendants' appeal followed.

The record before us discloses that on July 26, 1965, and for an undisclosed period prior thereto, Minmar was the owner of

record of a rectangular tract of land fronting on the north line of Villa Avenue, and described as Lot 2 of LePere Villa Place, located in the City of Olivette, St. Louis County. Minmar caused the tract to be surveyed and platted as a subdivision, named Woodmoor Acres. The plat shows that the tract was subdivided into twelve lots, numbered 1 to 12, inclusive, and a private street named Woodmoor Drive, which extends northwardly from Villa Avenue and terminates in a circular turn-around on the property. The affidavit attached to the plat, executed by the president and secretary of Minmar and dated July 26, 1965, reads in part: "Woodmoor Drive, 40 ft. W. and its rounded intersection shown hatched on the above plat is hereby dedicated as a private street for the use and benefit of the owners of lots in the above subdivision * * *." Minmar, by its officers, also executed what was titled, "Trust Agreement and Indenture of Restrictions, 'Woodmoor Acres'," likewise dated July 26, 1965, the provisions of which will be subsequently discussed. According to the affidavit of a title examiner, not controverted, the plat and the Trust Agreement were filed for record on August 23, 1965, and recorded in Book 116, Page 44, of the St. Louis County records.

Plaintiff advances alternative grounds in support of its claimed right to enforce one lien against the seven lots. Both of its arguments involve the construction or application of § 429.040, RSMo 1969, V.A.M.S., which provides:

"When the improvements consist of two or more buildings, united together and situated upon the same lot or contiguous lots, or separate buildings upon contiguous lots, or a continuous or connected sidewalk in front or alongside of contiguous lots, and erected under one general contract, it shall not be necessary to file a separate lien upon each building or lot for the work done or materials furnished in the erection of such improvements. (R.S.1939, § 3579)"

In connection with its first contention plaintiff points out that while the plat of the subdivision and the Trust Agreement bear the date of July 26, 1965, neither was filed of record until August 23, 1965; and that in the interim, on August 11, 1965, an excavating contractor, named Robert T. Boston, began his work on the tract under a contract with Minmar. Accordingly, plaintiff maintains, it is entitled to have one lien impressed since, having been properly filed, it dates from August 11, 1965, at which time Minmar was the owner of the entire, undivided, and hence contiguous, tract.

To establish the date of August 11, 1965, as the time for the commencement of its lien plaintiff relies exclusively on the affidavit of Boston, filed in support of its motion for summary judgment. In his affidavit, after stating that he was over 21 years of age and had been engaged for many years in excavating and grading work, he deposed:

"* * * that in 1965 I was employed by Minmar Investment Company, through Mr. Frank Weinberg, under a contract to perform certain services in connection with the clearing, grading, and excavating necessary for the development of the Woodmoor Acres Subdivision, located on the North side of Villa Avenue in the City of Olivette, Missouri.

"I further state that the first work performed by me and my employees on the Woodmoor Subdivision pursuant to my employment by Minmar Investment Company, occurred on August 11, 1965."

We agree that under the so-called "first spade rule," Schroeter Bros. Hardware Co. v. Croation "Sokol" Gymnastic Ass'n, 332 Mo. 440, 58 S.W.2d 995, a properly filed mechanics' lien dates from the commencement of the work on the building or the furnishing of the materials therefor. H. B. Deal Construction Co. v. Labor Discount Center, Inc., Mo., 418 S.W.2d 940. Here plaintiff furnished materials used in the erection of the seven residences.

What is meant by the phrase "commencement of the building," and did the work performed by Boston, as stated in his affidavit, fall within the scope of that phrase? In Deal, the Supreme Court (418 S.W.2d 940, 951) defined the phrase as meaning " * * * the visible commencement of actual operations on the ground for the erection of the building or the making of the improvement which makes it apparent that a building has been commenced or that an improvement is to be made, done with the intention and formed purpose to continue the work until completed. * * * " The court quoted from Boisot on Mechanics' Liens, § 56, to the effect that such work as the excavation for the foundation, or the attachment to the land of any material used in constructing a building would fall within the meaning of the phrase, but it also held that such work as laying off the ground for buildings, driving pegs, clearing stumps, on-site inspections, and locating test holes would not. Of particular relevancy in the instant case is the following passage from its opinion (418 S.W.2d 951):

" * * * and in Rupp [Trustees] v. Cline & Sons, Inc., 230 Md. 573, 188 A. 2d 146, 1 A.L.R.3d 815, grading and leveling the lot, were held insufficient to constitute 'commencement' of the building. * * * "

■ We are not unmindful of the Supreme Court's opinion in L. Vasquez v. Village Center, Inc., Mo., 362 S.W.2d 588, decided by Division No. 1 of the Supreme Court, as was Deal, but we are of the opinion it is not applicable to the instant case. There the plaintiff, an excavating and grading contractor, sought to have a lien impressed on the real estate because of the work he performed in grading the vacant land in preparation for a shopping center. Defendant maintained that such work was not lienable inasmuch as it was not performed as part of a contract for the construction of a building. In ruling that the plaintiff was entitled to a lien the court said (362 S.W.2d 588, 594):

"It appears to us that there was substantial evidence from which a jury reasonably could have found that the work performed by plaintiff was lienable within the meaning of the language of Section 429.010, construed, as it should be, as favorably to plaintiff as its terms will permit. That is because there was evidence justifying a finding that the work plaintiff did was performed as an integral part of a total plan to proceed without delay to erect a group of buildings as a shopping center on the land in question. The evidence that the course of the creek which meandered through the property was changed; the evidence as to the leveling and filling, the construction of parking areas adjacent to designated building sites, the providing of means of ingress and egress for the proposed shopping center and the parking areas to and from Manchester Road, the preparing of subgrades for buildings on which concrete slabs were to be poured as the next step in the construction process—all amounted to evidence of essential work in the accomplishment of the specific plan and intention to build a shopping center including buildings. * * * "

In the instant case it is not Boston, the grading contractor, who seeks to impress a lien on the entire tract for the services he performed as it was in Vasquez, it is plaintiff, a materialman, who seeks to enforce one lien against the seven residences and the lots on which they stand. The Deal case would indicate that Boston's work of clearing and grading would not constitute the commencement of the residences. And the reference in his affidavit to " * * * excavating necessary for the development of the Woodmoor Acres Subdivision, * * * " is an ambiguous phrase which may or may not have some connection with the commencement of the residences. Even under Vasquez, Boston's affidavit was not sufficient to show as a matter of law, on summary judgment, that work he performed, " * * * was performed as an integral part of a total plan to proceed

without delay to erect * * *" the seven residences in question. According to the plaintiff's petition it did not deliver the first of its material to any of the seven residences until July 26, 1966, almost a year after Boston started his work. All of such matters may, and no doubt will, be developed in a trial of the case, but under the record before us we think it is insufficient to show, as a matter of law, that plaintiff is entitled to date its lien from August 11, 1965, so that it may be said that the presently divided seven lots were part of a contiguous tract as of that date.

■ The second of plaintiff's contentions, in which the chancellor's memorandum indicates he concurred, is that the seven lots are now, and were when the materials were furnished, "contiguous" within the meaning of that work as used in § 429.040. Our Supreme Court has construed that word in the statute as " * * * implying actual contact or connection * * *"; that is, " * * * an actual joining or touching of the lots." Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, 171 S.W.2d 580, 582. And in Stewart Concrete & Material Company v. James H. Stanton Construction Co., Mo.App., 433 S.W.2d 76, the Kansas City Court of Appeals held that two lots were not contiguous within the meaning of that statute where they had only a common corner; and that the word "contiguous" connotes lots which have one side, or at least part of one side, in common.

We are here concerned only with lots 1, 2, 3, 4, 5, 8 and 12. As the lot numbers indicate and the plat shows, the first five abut each other, but lot 8 is separated from lot 5 by lots 6 and 7, and lot 12 is separated from lot 8 by lots 9, 10 and 11. Judged by the foregoing standards set in Stamm and Stewart, it is readily apparent that not all seven lots are contiguous. Recognizing that fact, plaintiff invokes the decision in Stamm that two lots owned by the same owner, and separated only by a public alley, were contiguous within that word as

used in § 429.040. In reaching that result the court pointed out that all that the municipality acquired when the alley was dedicated to public use was an easement, and that the fee to the adjoining lots, subject to the easement, remained in the owner of the two lots. Accordingly, plaintiff here argues that lot 8, directly across Woodmoor Drive from lot 5, is contiguous; and that lot 12, directly across the street from lot 1, is likewise contiguous.

The weakness in that argument, in our opinion, is that Woodmoor Drive, unlike the alley in Stamm, is a private street, not a public thoroughfare. It is so referred to in the plat. And the Trust Agreement and Indenture of Restrictions, provides that Minmar, as the then owner of the entire tract:

" * * * hereby grants, bargains, sells, conveys and confirms unto the Parties of the Second Part as trustees and as joint tenants and not as tenants in common, and to the successor or successors of them:

"A. All streets, roadways, paths, rights-of-way, and public utility easements, sanitary sewers, storm water sewers, culverts and drainage facilities contained in said subdivision not otherwise dedicated to a municipal corporation or governmental entity.

"B. Easement in, over, upon and across such portions of said land as may be now or hereinafter designated as streets, roadways and paths, * * *."

The words "grant, bargain and sell" used in the Trust Agreement are the statutory words for the conveyance of a fee simple title, § 442.420. It is our conclusion that by that conveyance the trustees were vested with the fee simple title to Woodmoor Drive, in trust for the benefit of the lot owners, who, at most, acquired only a beneficial interest in the street. Horn v. Muckerman, Mo., 307 S.W.2d 482. And since the owners of lots 8 and 12 acquired no legal title to the private street, it fol-

lows that those lots were not contiguous with lots 5 and 1, respectively, within the meaning of § 429.040.

In a final effort to sustain its judgment plaintiff cites Schwartz v. Shelby Construction Co., Mo., 338 S.W.2d 781, and concludes from that case that, " * * * it appears unnecessary to establish that lots on opposite sides of a private street have ownership rights to the center of the street in order to show that they are contiguous lots, so long as the lots themselves are under the same ownership and so long as the contract of the lien claimant is a contract with the common owner of the lots that are opposite each other on the private street." Plaintiff is mistaken in stating that the streets referred to in Schwartz were private streets; a close reading of that case will show that the streets there involved were public streets.

■ In addition to asserting that plaintiff may not have one lien impressed on the seven lots because they are not contiguous, defendants also maintain that the seven residences were not " * * * erected under one general contract * * *" within the meaning of those words as used in § 429.040. Defendants conceded below that plaintiff furnished lumber for the erection of the seven residences under a single contract with Minmar, but they contended there, and now contend here, that it was not a "general contract" because another materialman also furnished some lumber for the construction of such residences. Defendants cite two cases in support of their contention, Stewart Concrete & Material Co. v. James H. Stanton Construction Co., Mo.App., 433 S. W.2d 76 and Phillip Gruner & Bros. Lumber Co. v. Jones, et al., 71 Mo.App. 110, and rely heavily on the following quotation from Stewart (433 S.W.2d 79):

"It has long been ruled and generally held that the words 'erected under one general contract' as used in mechanics' lien statutes are not to be confined to a case where the whole of the buildings are to be completed under one contract, but include a contract to purchase all of the materials of a specified kind for the buildings. * * *"

Similar language appears in the Gruner case.

In their brief defendants argue that in Stewart the court thereby " * * * concluded that the understanding had to be for *all* of the materials of the specified kind for the buildings * * *." In short, defendants substitute the words "had to be" for that of "include" as used by the court. We do not agree with defendant's contention. First, because the word "include" is not one of limitation. And secondly, because the appellate courts have construed the words "general contract" as used in § 429.040, as they relate to a materialman, to mean a single contract for the material furnished for the erection of all of the buildings on the contiguous lots.

Historically, in 1876, in Fitzgerald v. Thomas, 61 Mo. 499, and Fitzpatrick v. Thomas, 61 Mo. 512, it was held that where four separate buildings were erected, under one contract, upon four separate but contiguous lots, a single lien filed against all of the lots was invalid. For the evident purpose of changing the rule as declared in those cases the Legislature, in 1877, passed what is now § 429.040. The first Supreme Court case of any significance which construed § 429.040 was Walden v. Robertson, 120 Mo. 38, 25 S.W. 349, handed down in 1894. While the principal point decided in that case was that the term "general contract" as used in the statute did not confine the contract to one for the erection of the whole building, but included one for the erection of only the walls of such buildings, it also held (25 S. W. 350):

" * * * As the contract related to and covered all the houses to be built, it was general, and the fact that the price to be paid was stated at so much per house does not resolve the general contract

into specific and separate contracts for each house. * * * "

An even closer case in point is National Plumbing Supply Co. v. Torretti, et al., 237 Mo.App. 570, 175 S.W.2d 947, written by Judge Anderson for this court. There the appellant, Carr-Trombley Manufacturing Co., by a cross-petition, sought to have one lien impressed upon two contiguous lots for material Carr-Trombley had furnished for the erection of two buildings thereon. The evidence showed that shortly after January of each year Carr-Trombley customarily sent a price list of its materials to defendant, from which the defendant would send in orders for materials needed. In January, 1931, an agreement with respect to prices for materials to be furnished during the year was made between Carr-Trombley, through Krumpleman, the materialman's representative, and Chinberg, the principal defendant, and the latter requested that deliveries for the two buildings be made as one job. Among other defenses to the one lien raised by the defendant was that the material was not furnished by Carr-Trombley under one general contract within the meaning of § 429.040. In overruling that contention the court held (175 S.W.2d 953):

"The evidence in this case shows that shortly after January, 1931, Krumpleman, representing the appellant, and Chinberg agreed upon a price list for the building materials which Chinberg would use in any and all buildings that he would erect during that year. The evidence also shows that Chinberg told Krumpleman to make the deliveries for the two buildings as one job. Chinberg testified that this 'was a contract that was supposed to cover all the work.' All deliveries, thereafter, were made as needed and in accordance with this agreement as to prices.

"From this evidence, it is clear that the agreement which was made by appellant's offer of materials at certain prices and Chinberg's acceptance of the offer by ordering materials for the two houses as one job, was a general contract, and not a special contract confined to any single or definite building. It, therefore, was a general contract within the meaning of Section 3579, R.S.Mo.1939, Mo.R.S.A. § 3579. Bulger v. Robertson, 50 Mo.App. 499."

For other cases in which the term "general contract" has been construed to mean a single contract for all of the buildings see Deardorff v. Roy, 50 Mo.App. 70; Bulger v. Robertson, 50 Mo.App. 499. Conversely, it has been held that absent evidence that the materials were furnished under one contract for the erection of all of the buildings on contiguous lots, a purported lien was invalid. Mansfield Lumber Co. v. Johnson, Mo.App., 91 S.W.2d 239; Mound City Supply Co. v. Woodland Development Corp., Mo.App., 414 S.W.2d 805.

For the reasons stated the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment reversed and cause remanded with directions.

BRADY, P. J., and WOLFE, J., concur.

DOWD, J., not sitting.