**E.W. ALLEN & ASSOCIATES, INC., and Nautilus Architecture and Planning, Inc., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants.**

**Civ. No. 88–C–598A.**

United States District Court, D. Utah, C.D.

Nov. 5, 1991.

Craig Coburn, Salt Lake City, Utah, Michael Hughes, St. George, Utah, for consolidated plaintiff Nautilus.

Jeffrey Silvestrini, Martha Stonebrook, Salt Lake City, Utah, for consolidated defendant, F.D.I.C.

ALDON J. ANDERSON, Senior District Judge.

The above captioned case is now before the court on cross motions for summary judgment. Consolidated plaintiff Nautilus Architecture and Planning, Inc. ("Nautilus") filed a Motion for Partial Summary Judgment seeking a determination of priority in favor of itself against consolidated defendant Federal Deposit Insurance Corporation ("FDIC"). FDIC then filed a Motion for Summary Judgment seeking a ruling on the same issue. The court held a hearing on the cross motions for summary judgment on October 7, 1991. Michael Hughes and Craig Coburn appeared on behalf of Nautilus. Jeffrey Silvestrini and Martha Stonebrook appeared on behalf of

FDIC. Having reviewed the briefs of the parties, the file, and relevant available authorities, the court is prepared to rule.

### I.

This lawsuit revolves around a 280 acre parcel of wooded land in the mountains of southern Utah. The parties now before the court, Nautilus and FDIC, claim competing interests in the parcel. The owner of the parcel originally envisioned building a multi-million dollar luxury resort complex on the parcel. Unfortunately, that vision never came to fruition. The project, however, did not expire before acquiring some creditors, two of which, Nautilus and FDIC, are now vying for priority before this court.

Early in the life of the project, the owner hired Nautilus, an architecture firm, to give substance to his vision of a luxury resort by drawing plans and specifications for the resort complex. Nautilus then subcontracted with E.W. Allen & Associates ("Allen")[1] to provide some structural engineering assistance. Allen finished its work and, not having been paid for its work, recorded a notice of lien on the property to protect its mechanics' lien interest. Allen recorded its notice of lien on January 25, 1985. Shortly after Allen recorded its notice of lien, Nautilus apparently finished its work on the project because it also began complying with the procedural requirements for preserving its mechanics' lien interest. The owner of the property never fully paid either Nautilus or Allen for their work. Nautilus now asserts its claim for payment in this lawsuit as a mechanics' lien against the 280 acre parcel.

FDIC is the successor in interest to North American Savings and Loan ("North American"). North American helped finance the owner in attempting to build the multi-million dollar resort complex. North American loaned the owner substantial sums of money for the project on the security of a trust deed to the 280 acre parcel.

The owner failed to repay the loan given him by North American. The trust deed in favor of North American on which FDIC now bases its claim to the parcel is dated February 25, 1985, and was recorded on March 16, 1985. FDIC and Nautilus now dispute which of their claims in the parcel has priority.

### II.

#### A. Nautilus' Motion for Partial Summary Judgment

1. commencement of work.

■ Nautilus argues it has a valid mechanics' lien that takes priority over FDIC's interest in the parcel and is, therefore, entitled to judgment as a matter of law. The parties do not dispute that Nautilus performed lienable work for which it has not been paid. Nautilus' first asserted ground for priority is that sufficient construction had been completed on the property to constitute "commencement to do work" under the applicable statute prior to the execution of FDIC's deed of trust. Nautilus' position is based on the Utah statutes governing mechanics' liens.[2]

Utah statutory law provides a mechanics' lien for architects such as Nautilus that perform services in the improvement of land. See Utah Code Ann. § 38–1–3 (1988). The priority of a mechanics' lien with respect to other encumbrances, such as a deed of trust, is governed by § 38–1–5 of the Utah Code which provides in pertinent part:

[Mechanics' liens] shall relate back to, and take effect as of, the *time of the commencement to do work* or furnish materials *on the ground* for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was com-

---

1. Allen was the original plaintiff in this action. This court previously dismissed Allen's claims, however, for failing to properly preserve its claims.

2. This action was removed to federal court because the FDIC is a party. The claims of the parties are state law based and thus governed by state substantive law. *See Tyree v. White,* 796 F.2d 390, 392 (11th Cir.1986).

menced, work begun, or first material furnished on the ground.

Utah Code Ann. § 38–1–5 (1988) (emphasis added).

Nautilus claims a lien against the 280 acre parcel and argues that work had "commenced" on the ground on the development of the resort complex prior to FDIC's trust deed. Nautilus makes specific factual allegations regarding actions it claims constituted "commencement to do work" and had been completed prior to the trust deed. Nautilus' claim, however, is not appropriate for decision on summary judgment. Significant factual disputes exist in the deposition testimony as to when and if the actions alleged by Nautilus to be "commencement to do work" were taken. Consequently, the court cannot grant Nautilus summary judgment since substantial issues of material fact remain disputed. *See* Fed.R.Civ.P. 56.

2. record notice of lien.

■ As an alternative, Nautilus asserts that Allen's recording of its notice of lien claim in January of 1985, prior to FDIC's trust deed, entitles Nautilus to summary judgment on the issue of priority. Nautilus begins its argument by properly noting that all mechanics' liens stand on an equal footing with each other for purposes of priority. *See* Utah Code Ann. § 38–1–10. In other words, once any mechanic establishes the priority of its lien, that date serves as the date of priority for all mechanics' liens on the same project. *See First of Denver Mortgage Investors v. C.N. Zundel,* 600 P.2d 521, 526 (Utah 1979). Nautilus next cites § 38–1–9(2) of the Utah Code which states, "From the time the claim is filed for record, all persons are considered to have notice of the claim." Utah Code Ann. § 38–1–9(2). From these two principles of Utah mechanics' lien law, equal footing and record notice, Nautilus concludes that Allen's recording of a notice of lien on January 25, 1985, established the priority date for Nautilus' mechanics' lien. Nautilus cites no directly supporting authority for giving this interpretation to these two principles. *But cf. Hostetter v.*

*Inland Dev. Corp. of Montana,* 172 Mont. 167, 561 P.2d 1323, 1326 (1977) (filing of a lien does not create lien, it merely extends and preserves life of lien).

The court does not agree with Nautilus' interpretation of the statutory provisions. The Utah statutes expressly address the issue of priority between a mechanics' lien and other encumbrances. Section 38–1–5 of the Utah Code states that priority is established at the occurrence of one of two events, commencement to do work or delivery of materials. Utah Code Ann. § 38–1–5. The priority section makes no mention of record notice or any other form of notice. The legislature chose a specific test for the determination of priority, commencement to do work. Presumably, the Utah legislature had the opportunity to use the record notice system for establishing easily ascertainable priority dates for mechanics' liens but did not.

In a recent decision from the Utah Court of Appeals, a position similar to that proposed by Nautilus was posited. In *Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.,* 784 P.2d 1217 (Utah Ct.App.1989), *cert. denied,* 795 P.2d 1138 (Utah 1990), the Utah Court of Appeals reviewed the Utah mechanics' lien statute regarding priority, § 38–1–5 of the Utah Code, in a context quite similar to that now presented this court. In the *Ketchum* case, the court of appeals was faced with an architect asserting a mechanics' lien against a ski resort development. The architects claimed that actual notice to their competing creditor of their off site lienable work was sufficient to establish priority for their mechanics' lien. In considering the position asserted by the architects, the *Ketchum* court reviewed the statute, the court's view of the legislature's intent in choosing the language used in the statute, and authority from other jurisdictions on the issue. The court determined that the "commencement to do work" standard in the statute was established as a means of determining when third parties could have had notice that liens might have attached to a construction project. However, the court ruled that actual notice is not an option for establishing priority un-

der the statutory scheme as established by the Utah legislature. *Ketchum,* 784 P.2d at 1224.

In the case now before this court, Nautilus argues that record notice should be an option for establishing priority under Utah's law of mechanics' liens. Though a record notice test arguably serves the purposes of the legislature of providing notice of liens to third persons, current Utah case law mandates that we follow the commencement of work test as established by the Utah legislature. *See Ketchum,* 784 P.2d at 1224 n. 15 and accompanying text. *But see id.* at 1224 n. 12. *Cf. Western Mortgage Loan Corp. v. Cottonwood Constr. Co.,* 18 Utah 2d 409, 424 P.2d 437, 439 (1967) (problem is one of notice to third persons that liens may have attached). The court, therefore, determines that Allen's recorded notice of lien does not establish the date of priority for the Nautilus lien under Utah's mechanics' lien law as it now exists.

Nautilus proposed two grounds for granting partial summary judgment and establishing that its lien has priority over the FDIC's trust deed. The court finds that the first is founded on disputed issues of material fact and the second is unsupported by applicable state law. Nautilus' motion for partial summary judgment is, therefore, denied on both theories.

### B. FDIC's Motion for Summary Judgment

FDIC has also moved for summary judgment on the issue of the relative priority between the FDIC trust deed and the Nautilus lien under the "commencement to do work" standard. To avoid the problem of disputed issues of material fact, FDIC assumes for the purposes of its motion that all the construction activities alleged by Nautilus did occur on the property prior to the date of its trust deed. Therefore, for the purposes of ruling on FDIC's motion, the court will assume that the following activities had taken place on the parcel of land:

1. Trees were selectively felled for buildings, roads, gondolas and other improvements planned for Phase I of the project.
2. A road providing access to the property was at least "bladed" by machinery on the property and possibly realigned on the property.
3. A corral and a temporary tack room were constructed from logs cut down on the property.
4. Top soil was excavated in preparation for some buildings and stockpiled on the property.
5. A test well was drilled.

*See* Brief of Nautilus, Doc. 78 at ¶ 9. FDIC argues that, as a matter of law, these activities do not satisfy the statutory requirement of "commencement to do work." As the "commencement to do work" standard sets the priority date for mechanics' liens, the Nautilus lien would not have priority over the FDIC trust deed if the standard is not satisfied.

As noted in the preceding discussion of the Nautilus motion, the Utah Court of Appeals has recently reviewed Utah mechanics' lien law in *Ketchum,* 784 P.2d 1217. As an alternative to the notice based legal theory reviewed *supra,* the architects in *Ketchum* argued that sufficient work had been undertaken on the project site prior to the execution of the trust deed, with which their lien was competing, to constitute "commencement to do work" and thus establish priority for their lien. Specifically, surveying, staking, and soil sample work had been done on the property prior to the execution of the trust deed. The architects argued this work was sufficient to grant them priority under the "commencement to do work" standard. The Utah court analyzed the architects' argument by stating that Utah interprets the "commencement to do work" test similarly to the majority of jurisdictions using that test. *Ketchum,* 784 P.2d at 1227. The court then reviewed the positions taken by several other jurisdictions on whether the type of work cited by the architects constituted "commencement to do work." *Id.* The court cited representative case authority from several jurisdictions that it apparently found persuasive in interpreting

the "commencement to do work" standard. The Utah court's analysis indicates that Utah follows the majority position with respect to interpreting the "commencement to do work" standard and accepts as persuasive such foreign jurisdiction authority interpreting that standard.

■ To determine the priority date of a mechanics' lien against another encumbrance, the court must look to the "commencement to do work" test. *See* Utah Code Ann. § 38–1–5. The phrase "commencement to do work" means that actual visible on site improvements must be present. *Ketchum,* 784 P.2d at 1227. The improvements must be of such a nature that they represent an actual beginning of improvement on the ground and must be visible to the extent that a person using reasonable diligence in examining the premises would be able to see it and be on notice that lienable work was underway. *See Calder Bros. Co. v. Anderson,* 652 P.2d 922, 924 n. 1 (Utah 1982) (visible evidence of work provides evidence to any interested party of commencement); *Western Mortgage,* 424 P.2d at 439 (problem is one of notice to world that liens may have attached); *Nu–Trend Elec., Inc. v. Deseret Federal Savings and Loan Assoc.,* 786 P.2d 1369, 1371 (Utah Ct.App.1990) ("work must have continuity of purpose such that a reasonable observer ... would be on notice that work was underway for which a lien could be claimed"); *Tripp v. Vaughn,* 747 P.2d 1051, 1055 (Utah Ct.App.1987) (visible evidence of work performed must give notice to others who may claim an interest in the property that work has begun); *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.,* 279 Minn. 278, 156 N.W.2d 748, 752 (1968) (work should be sufficiently visible that person using reasonable diligence could see it); *Wayne Bldg. & Loan Co. of Wooster v. Yarborough,* 11 Ohio St.2d 195, 228 N.E.2d 841, 857 (1967) (beginning of work sufficient for attachment of lien should be reasonably apparent); *Goebel v. National Exchangors, Inc.,* 88 Wis.2d 596, 277 N.W.2d 755, 762 (1979) (work should provide notice to all that may have an interest that work has

begun on a building). Whether this standard has been met is a matter necessarily somewhat unique to each set of facts present.

■ An examination of the cases decided in Utah and other jurisdictions does reveal, however, certain categories of activities that generally do not constitute "commencement to do work." As noted by the Utah Court of Appeals in *Ketchum,* "clearing, grading, and filling of land does not constitute commencement." *Ketchum,* 784 P.2d at 1227 (citing and explaining *Clark v. General Elec. Co.,* 243 Ark. 399, 420 S.W.2d 830, 834 (1967)). Placing stakes to define streets and cutting and filling levels is not commencement. *Mortgage Assoc. v. Monona Shores, Inc.,* 47 Wis.2d 171, 177 N.W.2d 340, 350–51 (1970) (cited by *Ketchum* court). Neither does the drilling of test holes qualify as commencement. *Ketchum,* 784 P.2d at 1227 (citing *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.,* 576 S.W.2d 794, 802 (Tex.1978)). Clearing land, grading land, and general excavation on the land are also not sufficient to be commencement. *United Lumber Co. v. Minmar Inv. Co.,* 472 S.W.2d 630, 633 (Mo.Ct.App.1971); *Clark v. General Elec. Co.,* 243 Ark. 399, 420 S.W.2d 830, 834 (1967) (clearing, grading, and filling land is not commencement). Further, cutting brush for lines is not commencement. *H.B. Deal Constr. Co. v. Labor Discount Center, Inc.,* 418 S.W.2d 940, 944, 952 (Mo.1967). Erecting a protective fence prior to beginning work is not commencement. *National Lumber Co. v. Farmer & Son, Inc.,* 251 Minn. 100, 87 N.W.2d 32, 35–36 (1957). And finally, as a general matter, and to the extent that it provides a useful distinction, mere preparatory work is not commencement. *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.,* 576 S.W.2d 794, 802 (Tex.1978).

■ On the other hand, some actions are generally found to be commencement. Actual excavation for the foundation of a building is commencement. *See Davis–Wellcome Mortgage Co. v. Long–Bell Lumber Co.,* 184 Kan. 202, 336 P.2d 463,

**1510**

466 (1959). Laying a foundation is also commencement. *See Scott v. Goldinhorst,* 123 Ind. 268, 24 N.E. 333, 334 (1890). From the court's review of scores of commencement cases, sufficient work must be present to demonstrate a commitment to undertaking a project through to completion. *See generally Drilling Serv. Co. v. Baebler,* 484 S.W.2d 1, 9 (Mo.1972) (must have beginning of construction coupled with intent to continue work until completion for priority). *See generally* Annotation, *What Constitutes "Commencement of Building or Improvement" for Purposes of Determining Accrual of Mechanic's Lien,* 1 A.L.R.3d 822 (1965).

▪ As noted previously, each situation presents its own unique facts to be measured against the commencement standard. The cases cited provide only general guidance to analyzing the specific facts present in the current case. The cases do, however, provide sufficient assistance to permit the court to dismiss at the outset four of the five claimed undertakings on the property as insufficient to constitute commencement. The drilling of a test well which, after completion, left no visible sign other than a wooden stake is not commencement. *See Ketchum,* 784 P.2d at 1227. The excavation and stock piling of top soil around future building sites is not sufficient. *See Clark,* 420 S.W.2d at 834. The excavation was not digging for a basement or foundation but was merely leveling and grading style work removing only several inches of soil. "Blading" of the access road was little more than grading of land and, therefore, not commencement. *Id.* Finally, the "selective" felling of trees was not sufficient. *See H.B. Deal,* 418 S.W.2d at 951. Under the cases cited, clearing land is not sufficient. *See United Lumber,* 472 S.W.2d at 633. Presumably, clearing a tract of land for construction would leave a significantly more noticeable mark on the land than selectively removing some trees in a wooded area as done in this case. For these reasons, the court finds that these four activities did not constitute commencement and did not establish a priority date for mechanics' liens on the property.

▪ The fifth undertaking on the property is not so easily analyzed. A "corral and tack room was [sic] constructed from logs felled" on the property. Brief of Nautilus, Doc. 78 at ¶ 9(c). The tack room and corral were temporary structures and intended to be relocated a year after being built to make room for construction related facilities. Deposition of Varga at 226. The court has been unable to identify any reported cases applying the commencement standard to anything analogous to a corral and tack room.[3] As noted previously, the general statement of the test of commencement is whether the work performed gives notice to a reasonable lender that the construction project has actually gotten underway. *See* discussion *supra.* In the current case, Nautilus asserts a mechanics lien on a 280 acre parcel of land based on the commencement of work on a multi-million dollar resort complex to involve several buildings. The corral and temporary tack room were constructed of rough hewn logs from the property itself essentially just lashed together and occupying a small portion of land. Apparently, according to the undisputed representations of counsel, no specifications were even supplied for the tack room other than a temporary building to last approximately one year. *See* Varga Deposition at 226. Also according to representations of counsel, the purpose of the corral and tack room was primarily to assist in obtaining investors to finance the construction of the resort. Apparently,

---

3. With regards to the tack room, the court has reviewed two somewhat comparable cases regarding construction shacks. One unpublished case found that a construction shack with temporary power lines running to it was not commencement. *Ozark Acoustical Contractors v. National Bank of Commerce,* 1991 W.L. 3964 (Ark.App.Ct.). Another also apparently unpublished decision found that the erection of a tool shack was commencement. *Lumber & Millwork Co. v. Graham,* 1 A.L.R.3d 822, 837 (Pa. 1944). The *Graham* court, however, noted that a tool shed is generally known to be often the first thing erected on a construction site and, therefore, gives notice of the beginning of construction. A tack room related to a corral would not enjoy a similar generally accepted connotation.

both the corral and tack room were to be moved after one year to make way for the actual beginning of construction. *Id.* (corral and tack room to be relocated the next spring to make room for a concrete batch plant). Under these circumstances, the court cannot find that the corral and temporary tack room constructed of native unfinished materials was sufficient to put a reasonable lender on notice that a multi-million dollar resort complex construction project had begun and liens could have attached. The commencement of work standard necessary under Utah statutory law was not fulfilled and, therefore, the mechanics' liens on the project did not vest with a priority date earlier than FDIC's trust deed. FDIC's motion for summary judgment against Nautilus is granted.

### III.

Nautilus' motion for partial summary judgment is based on material factual allegations that are in dispute and, therefore, not ripe for summary judgment. Nautilus' motion is also based on a novel legal theory asserting that record notice is sufficient to establish priority for mechanics' liens. A mechanics' lien, however, is a statutory creature and necessarily defined by the legislature's choice of principles as expressed in the words of the statute. The statute governing priority only recites one test for priority and that test does not include the record notice theory espoused by Nautilus. Nautilus' motion is, therefore, DENIED.

FDIC's cross motion for summary judgment asserts that Nautilus' factual allegations, even if true, are insufficient as a matter of law to establish priority for its mechanics' lien over FDIC's deed of trust. Nautilus alleged five specific pre-trust deed actions taken on the land that it claimed constituted commencement of work on the resort project and thereby established priority for its mechanics' lien. A review of relevant law discloses that four of the five events are generally insufficient to be commencement of work. An analysis of the specific facts of the fifth activity under the commencement standard leads the court to conclude that it was not sufficient to place

a lender on notice that construction had commenced on the resort complex. FDIC's motion is, therefore, GRANTED.

IT IS SO ORDERED.